# WHEELING.

## Knight v. G. & C. Capito.

Submitted January 24, 1883—Decided March 29, 1884.

1. If a conveyance be made by a father to his son in consideration of old debts alleged to be due from the father to the son, and the same is impeached by his creditors as having been made with intent to hinder, delay and defraud them in the collection of their debts, the son will be held to stricter proof of his honesty in dealing with his father, than a stranger would be.   (p. 644.)

2. In such a suit if the burden of proof as to the existence and validity of such alleged debts, be cast upon the grantee, and the persons, to whom or by whom any of such debts were paid, as well as the subscribing witnesses to such deed are within the power of the grantee, and instead of examining them he becomes a witness for himself in regard to such consideration, such failure to call and examine such witnesses unless satisfactorily explained will be regarded as a badge of fraud upon said conveyance.   (p. 648.)

3. Where a creditor files a bill to set aside as fraudulent a deed executed by his debtor which recites the payment of a valuable consideration, and such creditor's debts are older than the deed, the burden is on the grantee to prove the payment of the purchase-money, or, if the deed was executed in payment of existing debts, to prove the existence and validity of such debts.   (p. 651.)

4. If an insolvent grantor, justly indebted to one of his creditors in a comparatively small amount, convey to him all of his property,

or the greater portion thereof, in satisfaction of his debt, for a nominal consideration, falsely recited in the deed, and claimed by the grantee to have been in hand paid, equal in value to that of the property conveyed but largely in excess of the debt actually due such creditor, and he accepts the same, such deed, as to the other creditors of the grantor, will be held to be fraudulent and void; as the necessary effect of such deed is to hinder, delay and defraud such other creditors; and the grantor and grantee in such deed will be held to have *intended the necessary* result of their wrongful act. (p. 655.)

5. A case held to come within the provisions of the first section of the 74th chapter of the Code of West Virginia by reason of fraud in the execution of a deed by a father, *insolvent at the time,* to his son, in consideration of old debts alleged to be due from the father to the son.

WOODS, JUDGE, furnishes the following statement of the case:

James L. Knight brought his chancery suit in the circuit court of Mason county in March, 1879, against Godfrey Capito, and his son, Charles Capito, alleging that Godfrey Capito was indebted to him in the sum of one hundred dollars, lent to him on May 26, 1873, with interest unpaid from May 26, 1877, and in the further sum of seven hundred and fifty-four dollars and eighty-three cents, lent to him on April 21, 1875, due one year thereafter with interest from date, which has been paid up to April 21, 1877; that on April 21, 1875, said Godfrey Capito was the owner of several parcels of land in Mason county, two of which—described as lots "13" and "13½" in the town of Mason—he and his wife conveyed to a trustee to secure the payment of the last loan of seven hundred and fifty-four dollars and eighty-three cents; that said Godfrey failed to pay the debt, and, on February 14, 1879, the trustee sold lots "13" and "13½," under the provisions of the trust-deed, which were purchased by the plaintiff at the price of three hundred and fifty dollars, which after payment of expenses and taxes, left a balance of five hundred and fifteen dollars and forty-eight cents still unpaid upon his debt; that on August 29, 1878, while plaintiff was at his request waiting on him to make some arrangement with his sons, Charles and Augustus Capito, to secure or settle his debt, the said Godfrey Capito by deed of that date conveyed

*all of his real estate*, except said lots No. "13" and "13½," to his son Charles Capito for the ostensible consideration of one thousand four hundred dollars, acknowledged in the deed to have been received; that said deed to Charles Capito was made without consideration and with intent to hinder, delay and defraud plaintiff in the collection of his debt, and that said Charles Capito, at the time the said conveyance was made, well knew that same was made with intent to hinder, delay and defraud plaintiff in the collection of his debt, and prays that the real estate so conveyed to said Charles Capito be sold and the proceeds applied to pay the plaintiff's debt, and for general relief.

To this bill the defendants filed a joint answer, and also a joint amended and supplemental answer, to both of which the plaintiff replied generally.　By their answers the defendants admit the existence and justice of the plaintiff's debt as stated, but they claimed an additional credit of one hundred and fourteen dollars and fifty-six cents for usurious interest paid on the debt.　They admit the sale of the trust-property at the price of three hundred and fifty dollars, but aver that at the time of the sale it was worth one thousand two hundred dollars, and was sold at a great sacrifice by the collusion and fraud of the plaintiff.　They admit the execution of the deed from Godfrey to Charles, dated August 29, for the consideration of one thousand four hundred dollars, and do not deny that the lands mentioned therein were *all* the lands owned by Godfrey, except lots "13" and "13½," conveyed in trust as aforesaid to secure plaintiff's debt, but the defendant, Charles Capito, for himself alleged in the answer, "that said Godfrey has estate, besides what is mentioned in the plaintiff's bill more than sufficient to pay off the balance due the plaintiff on the said notes held by him."　They both deny that the said deed made by Godfrey to Charles, dated August 29, 1878, was made without consideration, or that the same was made with intent to hinder, delay or defraud the plaintiff or any other creditors of Godfrey Capito in the collection of their debts, and Charles avers, "that at the time he purchased said real estate, he was not aware, that said Godfrey was indebted in any way to the plaintiff;" and the defendants, in attempting to account for

80

the consideration of said deed say, that Godfrey Capito had been engaged in the brewing business in Mason City; that financially the business was unsuccessful; that defendant, Charles, had advanced and loaned money to Godfrey, besides having given his labor and attention to said business, whereby said Godfrey became indebted to him in the sum of one thousand four hundred dollars, and that in order to secure himself from loss, the defendant Charles Capito purchased the lands mentioned in the deed of August 29, 1878. The depositions of each of the defendants were twice taken in the progress of the cause, as well as the depositions of the plaintiff and seven other witnesses. The circuit court heard the cause and dismissed the bill at the plaintiff's costs. From this decree the plaintiff has obtained an appeal and *supersedeas* from this Court.

*C. E. Hogg* for appellant.

*Simpson & Howard* and *Smith & Knight* for appellees.

WOODS, JUDGE:

The appellant has assigned many grounds of error, all of which may be reduced to a single one, viz: that the court erred in dismissing the plaintiff's bill, because the facts proved, that the deed made to Charles Capito was made with intent to hinder, delay and defraud the plaintiff and other creditors in the collection of their debts against Godfrey Capito.

From the view we have taken of this case it becomes unnecessary to recite all the testimony taken, tending to show the amount of usurious interest paid or that the sale of lots "13" and "13½" was in any degree affected by the collusion between the plaintiff and other persons, who desired to bid for it, referred to, rather than set forth in the answers; for if the said sale to Charles was fraudulent, the cause must be remanded for further proceedings, where these matters if they exist, can be enquired into; and if the said deed was not fraudulent, the decree of the circuit court must be affirmed, and in that event all other questions become immaterial.

This is a case where a father, in embarrassed and failing circumstances, pressed for four or five years to the necessity of asking for and obtaining from his son, long separated from him, small sums of money and many of the necessaries of life as mere gratuities; part of the time engaged in an unprofitable and unsuccessful business, largely in debt; his most valuable property encumbered to much more than its selling value, prostrated by paralysis, confined to his bed for a year before and a year after the making of the alleged fraudulent deed; almost entirely destitute of personal property, has conveyed all of his unencumbered real estate, which was in effect all the real estate he owned which could be made liable for his debts to his son, for an ostensible consideration wholly made up of old debts alleged to be due the son for services rendered and moneys advanced by him many years before the date of the deed, for which no note, bond, account or other memorandum in writing was ever given or made by either of the parties; and by far the greater portion of said alleged debts, if they ever in fact existed, were barred by the statute of limitations long before the date of said deed to the son. If this deed can be maintained, the just demands of the plaintiff and other creditors of said grantor must remain unsatisfied. All these circumstances are the usual badges of fraud; and unexplained or unrefuted, they directly tend to establish the fact, that such a conveyance made under such circumstances was made with intent to hinder, delay and defraud the creditors of the grantor in the collection of their debts. *Herrin, use, &c.* v. *Munsford, &c.*, 9 Dana 450; *Hunters* v. *Waite*, 3 Gratt. 26, 72; *Lewis &c.* v. *Caperton's Ex'or &c.*, 8 Gratt. 148; *Crawford* v. *Carper*, 4 W. Va. 56; *Garland* v. *Rues*, 4 Rand. 281; *Hunter's Ex'ors* v. *Hunter*, 10 W. Va. 321; *Martin & Gilbert* v. *Rexroad*, 15 W. Va. 512; *Lockhard & Ireland*, 10 W. Va. 87; *Goshorn's Ex'or* v. *Snodgrass, &c.*, 17 W. Va. 717.

The 1st section of chapter 74 of the Code of W. Va. provides that "every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment or execution suffered or obtained, and every bond or other writing given, with intent to delay, hinder or defraud creditors or other persons, of or

from what they are or may be entitled to, shall as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

By the second section of said chapter, it is declared that "every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made," but not on that account merely as to subsequent creditors and purchasers. It is contended by the appellants, that the deed of August 29, 1878, to the defendant Charles Capito is fraudulent and void under both of the said sections of chapter 74 of the Code, because the deed was wholly voluntary, and without any valuable consideration; and because even if made for a valuable consideration, it was made by the grantor, with intent to hinder, delay and defraud the plaintiff and others of his creditors, and that at the time of making this deed the grantee had notice of, and participated in this fraudulent intent. On the other hand the grantee denies the existence of any such fraudulent intent on the part of his father or himself, and denies all knowledge of such fraudulent intent on the part of his father, and also that at the time he purchased said lands, that he knew that his father was in any way indebted to the plaintiff, and he pretends to set forth the manner in which the consideration of one thousand four hundred dollars mentioned in the deed originated and was in fact paid.

While it is true as a general proposition that fraud is never to be presumed, but must always be proved by the party alleging it, yet this "must be understood only as affirming that a contract honest and lawful on its face must be treated as such until it is shown to be otherwise by evidence either positive or circumstantial. Fraud may be inferred from facts calculated to prove it." *Kane* v. *Weigly*, 22 Pa. State 179; *Martin & Gilbert* v. *Rexroad* and *Goshorn's Ex'ors* v. *Snodgrass, supra.* It is equally well settled, that in a transaction between near relatives as father and son, brothers and sisters, and many

others, for whom there is naturally a strong motive to provide, at the expense of honest creditors, when it is impeached as fraudulent, the party claiming the benefit of such transaction, is held to stricter proof of his claim, and of his honesty in the whole transaction, than would have been required of a stranger.    *Lloyd* v. *Williams*, 21 Pa. State 327; Bump on Fraud. Conveyances, 45 and 56; *Hawkins* v. *Alston*, 4 Iredell's Eq. R. 137; *Peebles* v. *Horton*, 64 N. C. 374.

It is also well settled, that a *bona fide* conveyance of a part or even of the whole of a debtor's property, for an adequate price in satisfaction of a valid pre-existing debt, without fraudulent intent, will be upheld, although the necessary effect of such conveyance should be to wholly defeat other creditors in the collection of their just debts.    Such a conveyance however is always regarded with a degree of suspicion, and if accompanied by any of the usual badges of fraud, it will become necessary for the grantee to prove the fairness of the transaction.

Among the badges of fraud, is a false statement of the consideration for which the conveyance was made.    In the case of a mortgage, a discrepancy between the amount to be secured and the mortgage debt, is a badge of fraud; and if the statement of the debt due, is intentionally false it is held to be a direct evidence of fraud.    *Marriott & Hardesty* v. *Givens*, 8 Ala. 694; Bump on Fraud. Con. p. 43.    Possession of the land by the grantor after the conveyance, renting the same and collecting the rents; and where the conveyance is alleged to have been made in payment of old debts due to the grantee, the absence of any notes, or accounts between the parties evidencing the existence of the debts; and the failure of the grantee to produce an important witness within his power, who could show the fairness and good faith of the transaction, are all circumstances exciting suspicions of unfairness, and create presumptions of greater or less strength against the fairness and good faith of the transaction, which if unexplained, may amount to sufficient proof of the alleged fraud.    *Peebles* v. *Horton*, 64 N. C. 374; *Hamilton's Adm'r* v. *Blackwell*, 60 Ala. 545.

Let us now apply these principles to the facts appearing in this record.    There is no controversy about the justice of the

plaintiff's debt. The defendants filed their joint answer to the plaintiff's bill on April 26, 1879, to which a general replication was filed. By this answer they undertake to show as well the amount as the real consideration for the purchase of the land pretended to be conveyed by said deed of August 29, 1878, but they do it in the most indefinite and general language, specifying neither dates nor amounts of the items which went to make up the one thousand four hundred dollars. If such items of account existed they must have known what they were, how and when they accrued; but while professing to set forth the consideration they content themselves by stating that Godfrey Capito had been engaged in the brewing business; that it was financially unsuccessful, and that defendant, Charles Capito, had advanced and loaned money to Godfrey Capito besides having given time, labor and attention to said business whereby the said Godfrey Capito became largely indebted to said Charles in the sum of one thousand four hundred dollars, and in order to secure himself from loss he purchased the said real estate mentioned in said deed of August 29, 1878, and the said Charles, for himself particularly answers, that when he purchased the said lands he was not aware that his father was indebted in any way to the plaintiff, and that Godfrey had other estate besides said lands more than sufficient to pay the balance due the plaintiff on the *notes* mentioned in the bill. Nearly eighteen months after the filing of said answer their amended and supplemental answer was filed. In the interval between the filing of these answers, their *own depositions* had been *twice taken and filed in the cause* which constitute all the material evidence in support of the fairness of the transaction; and while they both swear that, three hundred and forty dollars of the consideration mentioned in the deed was in fact a debt due from Godfrey to his son Augustus, which was paid to him by Charles after the date of said deed, yet their amended and supplemental answer makes no reference whatever to the consideration mentioned in the deed. The plaintiff was examined as a witness in his own behalf, and proved the justice and amount of his debts; and that in May or June, 1878, when he called on Godfrey Capito to collect his interest on the notes and to have the notes further secured, as the

property in his deed of trust had depreciated in value, that
he refused to give any additional security, but requested him
to wait until he could write for his sons to come and counsel
with him in regard to giving additional security. Witness
waited until the fall, when he called again, but Godfrey said
his sons objected to giving additional security and he refused,
to give it, but asked witness to wait thirty or sixty days
longer so he might have time to advise with his sons. Wit-
ness waited until October, 1878, when he wrote a letter to
both of Godfrey's sons, urging them to secure his debts and
save costs, but could not remember to which of them he ad-
dressed it.

George W. Knight, a brother of plaintiff, testified that he
was with him when he called on Godfrey in October and
heard plaintiff advise him to see his sons and fix the thing up
in some way, but Godfrey said his sons would not do it, and
that he could not get out to see about it himself. Rankin
Wiley jr., examined as a witness on behalf of plaintiff,
proved that in the spring of 1878 he called to collect a claim
off Godfrey Capito, who proposed if witness would release
one hundred dollars of the claim he would try and pay the
balance, which witness refused to do. Godfrey then said
witness could not collect it by suit, that he had been advised
by his attorney that as his sons were of age, he could convey
his property to his sons, and thereby prevent the collection
of the claim; he said that he did not want to do that if he
could raise the money to settle the claim, and that witness
had better accept his offer or he might not get anything.
Witness obtained a judgment on the said claim, and sued
out execution, and the sheriff levied the same on the goods
of Godfrey, who gave to the officer a schedule, as prescribed
in chapter 193 of the Acts of the Legislature of 1872. From
the schedule and appraisement, which bore date May 31,
1879, it appears that all his personal property amounted only to
two hundred and seventy-five dollars and eighty cents, and
after setting apart the two hundred dollars exempted by law,
the proceeds of the sale of the residue amounted to the sum
of forty-two dollars and ninety-four cents. Thus within
thirty-five days after the filing of said joint answer in which
said Charles Capito had stated that his father *had* property

other than that mentioned in the bill, more than sufficient to pay all the plaintiff's debts, it conclusively appears that said Godfrey was utterly insolvent. It appears from copies of the several deeds to Godfrey Capito, filed as exhibits with the bill, that the several parcels of land conveyed by him to Charles cost in the aggregate one thousand two hundred dollars, but their actual value at the date of the deed to Charles does not appear. The deed made by Godfrey to Charles Capito, bearing date the 29th ot August, 1878, was attested by two subscribing witnesses, was acknowledged by the grantor on the 30th, and recorded on the 31st of August, 1878. The depositions of the subscribing witnesses were not taken, and no reason appears why they were not examined. Neither was the deposition of Augustus Capito taken, although the grantor and grantee both pretend, that a large part of the consideration for said lands was a debt due from said grantor to him, and by Charles, after the date of said deed.

The only material evidence offered on behalf of the defendants, is their own depositions, once taken on the 12th and 13th of March, 1880, on their own behalf, when they were not cross-examined; and again re-taken by leave of court, on the 5th and 6th July, 1880, which seems to have been rather cross-examination on the part of the plaintiff, than examination in chief. It is difficult to reconcile the difference in their testimony given on these two occasions. We will not encumber this opinion by a statement in detail of all the evidence given by the defendants in their depositions, but after a thorough and careful examination and analysis of their testimony in connection with the uncontradicted testimony offered by the plaintiff, we have discovered so many discrepancies, contradictions and improbabilities in their testimony in relation to material matters lying within their own personal knowledge, that we have found ourselves unable to reconcile them in support of the pretensions of the defendant Charles Capito. All the transactions set forth in their answers to the bill, and testified to, were private personal transactions between themselves, equally well known to both, and there ought not to be, and if true, there *could* not be, any material discrepancies or contradictions in their testi-

mony respecting them.   There is scarcely a material fact to which the one has testified, which has not been contradicted by the other.   Was the defendant Godfrey at the time he executed said deed, insolvent or in embarrassed and failing circumstances?. Was he indebted to the plaintiff in the amounts claimed by him, and were these facts known to Charles Capito before the 29th of August, 1878?   In his answer to the bill, he avers that his father even then had property more than sufficient to pay all the plaintiff's debts, in addition to the lands mentioned in the bill, and yet the proof shows he had no other real estate, and that within thirty-five days after the filing of that answer, his father, by his own oath, appended to his schedule, exempting certain of his personal property from execution, showed that he was utterly insolvent, and no evidence was offered to support this allegation of his answer.   In his first deposition Charles testifies, that he first learned that his father was indebted to the plaintiff sometime after the deed was executed, by a letter written by the plaintiff to his brother Gustave. In this material statement he is contradicted by the testimony of his father, who testified, that he wrote to Charles to come down and pay off the plaintiff's debt, and that he might have lots Nos. "13" and "13½;" and again, that when he asked him to advance more money, he told him that he would sell him his property *that was yet free,* and that he could not sell him lots Nos. "13" and "13½" as the plaintiff had a trust on it, and also that when in 1876, he wrote and asked Charles to advance money and pay off plaintiff's debt, he replied that "plaintiff *was secured with that property down there;* he thought that overpaid the debt."   If more testimony on these points were needed, it will be found in the fact that the plaintiff's deed of trust was recorded, and in the suggestive fact, testified to by Charles, that he required his father *to show him the state of his business* before he would consent to render him any assistance.

From the deposition of Charles, taken in July 1880, it appears that he would be thirty-one years of age in the following November; therefore he became of full age in November 1870, and on January 2, 1872, he left his father, and entered into business for himself in Charleston, where he

still resides; that his brother Gustave, in July, 1880, was *twenty-six years* of age, and therefore he became of full age in 1875; and that the father ceased to carry on his business in the spring of 1876.    It follows therefore, if Gustave took the place of Charles, when he left, and worked for his father in carrying on his brewery for three years and a half, that at least three years of this service must have been rendered his father, *before he became twenty-one years of age.*    The father is, therefore, mistaken when he testified that Gustave served him in carrying on his brewery for three years and a half after he became of full age.

Charles testified that he carried on the brewery for his father for one year after he became of full age, for which he charged six hundred dollars, and that the money he sent him, as *near as he could remember*, was in the *neighborhood of six hundred dollars*, much of which was paid him by checks on the First National Bank of Charleston.    It is evident that no account, or memorandum of these sums of money, had ever been made or preserved, or it would have been mentioned or produced.    He further testified that when he left his father on the 1st or 2d of January, 1872, he and his father settled for the work he had done for him and his father then owed him for work eight hundred dollars, of which he paid him two hundred dollars, leaving a balance of six hundred dollars unpaid, and that the *first money* he paid his father was in October, 1874, when his sister died; that his father owed his son Gustave three hundred and forty dollars for his work, and that these several sums amounted within a fraction of one thousand four hundred dollars, and they compose the real consideration for said deed.    If this be true then, the real consideration must have been at least one thousand five hundred and forty dollars, exclusive of interest on the six hundred dollars due for work from January, 1872, and on three hundred and forty dollars due Gustave from the spring of 1876.    Again this evidence of Charles is contradicted by his father, for he explicitly testified in his last deposition, that when Charles became of full age, he made a contract with him for his work at one hundred dollars a year and he was to wait for his money until he became able to pay him, and he was to pay Gustave the same wages for the

time he worked for him, and that when Charles was about to leave him, he settled with him on January 2, 1872, for his work and he owed him two hundred and fifty dollars of which he on that day paid him two hundred dollars; that this two hundred and fifty dollars was for two and one half years' service of Charles, after he became of full age. In this, as well as to the period during which Gustave served him after his majority the father is mistaken, for it is perfectly certain that Charles *served* only *one* year, and Gustave could not have served him in carrying on his brewery for more than six months after he became of full age. Coupled with all these discrepancies and contradictions are the pregnant facts proved by both, that no note or memorandum or account was ever made or kept of these several pretended items of indebtedness, or that any promise of repayment was ever exacted or made at the times they were made or at any time, until about the time of the execution of the said deed. It is apparent that if the alleged debt of eight hundred dollars due Charles on the 2d of January, 1872, ever had any existence, it was barred by the statute of limitations more than eighteen months before the date of said deed; and although as between the father and the son it may be all right that they shall be acknowledged and paid by the father, it cannot be done, as it was under the circumstances in this case, to defeat the debts of the plaintiff whose debt was not so barred. *Crawford, &c.*, v. *Carper, &c.*, 4 W. Va. 56. In this case the plaintiff's *debts* antedate the date of said deed more than three years; they are admitted to be just; the debtor was insolvent; he was pressed for payment, had asked for and obtained indulgence, in order to counsel with his sons about paying the debts; had communicated with them; under their counsel the debtor refused to give the plaintiff other security for his debt, and with full knowledge of all these facts, one of these sons, the defendant, Charles Capito, proposes to his father, then bedridden with palsy for more than a year before, to convey to him all his lands, except lots "13" and "13½," already encumbered with a trust-debt of at least double the value thereof, for the consideration of one thousand four hundred dollars, every dollar of which was made up of secret claims and old debts of which

no one had ever before heard. These were circumstances which called upon the grantee to remove all suspicions of bad faith, by proving the existence and validity of the alleged debts, for the rule is well settled, that where a deed is impeached as fraudulent as to creditors, it is the imperative duty of the grantee to remove all doubts of the fairness of the transaction. *Hamilton's Adm'r* v. *Blackwell*, 60 Ala. 545; *Marriott & Hardesty* v. *Givens*, 8 Ala. 694; *Streepper* v. *Eckart*, 2 Whar. 302; Bump. on Fraud. Conveyances 55.

In this case the defendants had it in their power to remove many of the badges of fraud attaching to this transaction if the fraud did not exist, but they have failed to do so, or to explain why they have not done it. They have elected to rest their pretensions upon their own uncorroborated testimony, when if they had been well founded, they might have established them by the testimony of disinterested witnesses. If any debt was due to Gustave Capito, why not call him as a witness? Who could possibly have had better opportunities of knowing how long Charles worked after he became twenty-one years of age; or whether his wages were one hundred dollars or six hundred dollars a year; what wages he himself was to receive, how much was paid, and when, and by whom paid; what amount of money Charles sent by him when he went to nurse his father when he was sick, and whether the same was a loan or a gift to his father. Many of the neighbors near the brewery, if called, could, if such had been the fact, prove that Charles and Gustave, after they became of age, worked for their father, the time they were so employed, and the value of such labor. Why were the officers and books of said bank not produced to show the number and amounts of the several checks, which Charles said he had sent to his father? Where was the letter which Charles testified he wrote to his father two months before the date of the deed proposing to purchase these lands? And above all, why were the subscribing witnesses to the deed to Charles Capito, not called and examined by the defendants? They were the witnesses selected by the parties to the deed, to prove all that transpired at the execution thereof; the fact that they were not called, militates with great force against the fairness of the defendants' pretensions. All this evidence

was within the power of the defendants, but they did not use
it. It is a well settled rule of evidence, that if a party has
within his power evidence whereby he may render a doubt-
ful point certain, and he fails to produce it, the legal pre-
sumption is, that if he had produced it the evidence would
have been against it.   1 Stark. E. p. 545; 1 Greenl. Ev. § 37.
And in the case of *Peebles* v. *Horton, supra,* it was held, that
"upon an issue of fraud in regard to the conveyance of land,
if a defendant declines to call as a witness, in regard to a trans-
action to which he was a party, a disinterested person, then
known to him to be present in court; and instead of doing so
becomes a witness in regard to such transaction himself, it
being the very matter in question in such suit, it is a suspicious
circumstance, and a badge of fraud which may be considered
by a jury in making up their verdict."

It has been held that the assertion by a *cestui que trust*
against creditors that the grantor in the deed of trust is in-
debted to him in a larger sum than he is able to prove, is
*evidence* of fraud unless the suspicion of unfairness is removed
by evidence. *Marriott & Hardesty* v. *Givens, supra.* This rule
applies with equal force to an absolute conveyance for a fic-
titious consideration, or for a nominal consideration falsely
purporting to be in hand paid, greatly in excess of the real
consideration, unexplained by evidence, for in both cases the
effect of the deed is to hinder, delay or defraud other credi-
tors of the grantor.

In the case before us the nominal consideration of the deed
was one thousand four hundred dollars; the proof is that the
whole sum was made up of old debts alleged to be due the
grantor, whereof at least eight hundred dollars, if it ever had
any existence, was barred by the statute of limitations, and
as we have already seen cannot be permitted to stand in the
way of other *bona fide* creditors whose debts are not so barred;
the alleged debt of three hundred and forty dollars to Gus-
tave, which if it ever existed or was ever paid, was not paid
until January 2, 1880, long after this suit was brought, and
more than eight months after the filing of the defendant's
answer, wherein they alleged that at the execution of the
deed the whole one thousand four hundred dollars was due
to said Charles for work done for, and money advanced and

lent to said Godfrey; but the evidence clearly shows that a valid debt of three hundred and forty dollars to Gustave for work never did exist, for he could not have labored for his father in carrying on his brewery, for more than *one* year, and his wages were one hundred dollars a year of which a part had been paid him. The pretended debts for moneys advanced by Charles, according to his own evidence, amounted to only three hundred and fifteen dollars. Both defendants admit, that the father let Charles have two hundred dollars on January 2, 1872; the father says he paid it back to him about the time he bought lots No. "13" and "13½" for which he paid one thousand one hundred and five dollars, four hundred dollars of his own money and the balance borrowed from the plaintiff, to secure which he gave the deed of trust thereon. The deed conveying these lots to Godfrey bears date April 12, 1875, and the first check which Charles gave his father was dated April 15, 1875. The statement of the father that Charles re-paid the two hundred dollars which he let him have on the 2d of January, 1872, is not contradicted or explained by Charles, who sets up no claim that he advanced to his father two hundred dollars, at any one time. We are justified in presuming that at least two hundred dollars, of the three hundred and fifteen dollars, which Charles claimed to have advanced to his father, was a simple payment of his own debt. If it be conceded that one hundred and fifteen dollars, the residue of said moneys, was a valid debt at the date of said deed, then it follows, that while the pretended consideration of the deed was one thousand four hundred dollars, the real consideration was only the said sum of one hundred and fifteen dollars, due Charles, and the amount due to Gustave, which could not have exceeded one hundred dollars. The *intention* of the grantor in thus conveying to his son all of his unencumbered lands in payments of fictitious debts, could have been *none other* than to delay, hinder and defraud his creditors. If unimpeached, that would necesarily have been the effect of the deed, and a man must be taken to intend the necessary consequences of his acts, and if such act be fraudulent in law, it matters not that the parties did not intend to commit a moral wrong, the law will declare the act void as to the parties injured by it.

But did the defendant Charles Capito have knowledge of or participate in this unlawful intent when he obtained said deed? If it were possible, we would be glad to exonerate him from all responsibility in this fraudulent transaction, for it is evident, that he has been a kind and dutiful son; and that in what he has done, he has not so much sought his own profit, as to relieve a necessitous father. But however much a son may desire to relieve his father, he may not do a legal wrong which will injure his father's honest creditors. The evidence of Charles Capito shows, that the proposition to purchase this land, came from him by a letter to his father when he was bed-ridden with paralysis, two months before the date of the deed; that no notes or accounts of the sums claimed by him had ever been kept; that his claim of six hundred dollars for work, if it ever existed, was barred by the statute of limitations; that his brother never worked for his father after his majority more than one year, and the pretended debt due to him of three hundred and forty dollars was unjust; that two hundred dollars of the money advanced by him was repaying to his father the money paid him in January 1872; and that the consideration of one thousand four hundred dollars was nearly all fictitious. He knew his father was insolvent, that he had been in straightened circumstances from 1873, that the lands he sought to obtain were the whole of his unencumbered estate, and that the effect of the deed was to hinder all his other creditors from ever collecting their debts, and with full knowledge of all these facts he proposed to appropriate all of said lands, which cost one thousand two hundred dollars, in payment of the inconsiderable amount of one hundred and fifteen dollars to himself and less than one hundred dollars due to his brother. It is impossible from all the facts to resist the conclusion, that the fraudulent intent of the father was known to, and participated in by the son, at the time the said deed was made, and that the same was made with intent to hinder, delay and defraud the plaintiff in the collection of his debts. For this cause the said deed as to the plaintiff's said debts, is fraudulent and void, and the decree of the circuit court of Mason county rendered in this cause on February 24, 1881, dismissing the plaintiff's bill, must be reversed with costs to the appellant.

And this Court now proceeding to render such decree as the said circuit court ought to have rendered, it is adjudged, ordered and decreed, that the said deed dated August 29, 1878, executed by the said Godfrey Capito to said Charles Capito described in the plaintiff's bill as exhibit "I," be, and the same as to the debts of the plaintiff in the bill mentioned is hereby declared fraudulent and void.

It is therefore ordered that this cause be remanded to the circuit court of Mason county for further proceedings to be had therein according to the principles of this opinion, and the rules governing courts of equity.

REVERSED.    REMANDED.