# WHEELING.

## REILLY v. BARR.

Submitted June 11, 1890.—Decided June 25, 1890.

1. FRAUDULENT CONVEYANCES—EVIDENCE.
    If a conveyance is made by a father-in-law to his son-in-law for land, stating the consideration on the face of the deed to be one thousand dollars, the receipt of which is acknowledged, and

| | |
|---|---|
| 34 | 95 |
| 37 | 10 |
| 37 | 702 |
| 34 | 95 |
| 40 | 32 |
| 34 | 95 |
| 41 | 103 |
| 34 | 95 |
| 49 | 518 |
| 50 | 680 |
| 34 | 95 |
| 54 | 419 |
| 54 | 464 |
| 34 | 95 |
| 62 | 83 |

the evidence discloses the fact that said consideration was not paid, but that a very small portion of it was paid by crediting an old debt due from the grantor to the grantee, this false recital as to the payment of the consideration will be regarded as a badge of fraud; and, if said deed is impeached by the creditors of said grantor as having been made with intent to hinder, delay and defraud them in the collection of their debts, said son-in-law will be held to stricter proof of the *bona fides* of the transaction than a stranger would be.

2. FRAUDULENT CONVEYANCES—EVIDENCE.

Where a deed of conveyance is attacked by the creditors of the grantor as having been made and executed with intent to hinder, delay and defraud his creditors, in ascertaining whether or not such fraudulent intent existed in the minds of the grantor and grantee the court will look to the circumstances surrounding the transaction, circumstantial evidence being not only sufficient to establish such fraud, but on account of the secrecy of such transaction often the only evidence that can be obtained.

3. FRAUDULENT CONVEYANCES—EVIDENCE—ONUS PROBANDI.

When it appears that an instrument conveying real estate is impeached as fraudulent by creditors of the grantor, if the evidence discloses the fact that said instrument is false in any material part, the burden of showing that the transaction was fair lies upon the party who seeks to uphold it.

*S. B. Hall* for appellants cited:

Waite Fraud. Con. 315, 317, 325, 328, 333, 336, 344, 345, 378; 22 W. Va. 586; 23 W. Va. 645; 29 Am. Dec. 401; Code c. 74, §§ 1, 2; 2 Lom. Dig. c. 24 § 65; 3 Gratt. 32; 28 Am. Rep. 704, 721 n.; Bump. Fr. Con. 201–204.

*R. McEldowney,* counsel for Furbee, cited:

11 W. Va. 229; 28 W. Va. 653; 14 W. Va. 264; 34 W. Va. 449; 16 W. Va. 626; Bump. Fraud. Con. 56; 15 W. Va. 444; 6 W. Va. 168.

ENGLISH, JUDGE:

This was a suit in equity, brought by M. Reilly, Josephus Clark, and George A. Smith, doing business under the firm name of John L. Smith & Co., against David Barr and others, in the Circuit Court of Wetzel county, for the purpose of having certain conveyances made by the defendant, David Barr, to his son-in-law and co-defendant, Alexander Furbee, on the 15th and 16th days of February, 1884,

declared null and void so far as they affect the rights and interests of complainants, and praying for a sale of the property therein described, claiming that said deeds of conveyance are fraudulent and void as to the plaintiffs and several of the defendants who were creditors of said David Barr at the time of, and anterior to, the date of said conveyances.

It is alleged in plaintiffs' bill that the defendant David Barr owns and holds in fee-simple, in his own name, two tracts or parcels of land in said county,—one containing four acres, conveyed to him by one Peter Coen, and the other containing twelve acres, conveyed to him by Isaac Coen; also, that after the debts and liabilities mentioned in the bill accrued, on which judgments were subsequently obtained, but before the rendition of any said judgments, to-wit, on the 15th day of February, 1884, the defendant Barr, being indebted as aforesaid to plaintiffs and to others, conveyed to his son-in-law, Alexander Furbee, a sixteen and one-half acre tract of land lying in said county, for the consideration expressed in said deed of five hundred dollars the payment of which was therein acknowledged in full, and that on the 16th day of February, 1884, the said Barr also conveyed to said Furbee a certain lot in the town of Wileysville, in said county, on which there was then and yet are erected a dwelling-house and store room or house, and that the consideration expressed in the conveyance is also five hundred dollars, the payment of which is also acknowledged in full; that the said tracts of land were all the real estate owned by said Barr in said county or elsewere at the time of said conveyances, and that said Barr was wholly insolvent at the time of said conveyances to said Furbee as aforesaid; that both of said conveyances were made while Barr was indebted to plaintiffs in the sums for which judgments were subsequently obtained against him; and that said conveyances were made for the express purpose of avoiding the effect and lien of said judgments, which said Barr well knew would shortly be rendered against him, and for the purpose of hindering, delaying, and defrauding his creditors generally, and complainants in particular.

Plaintiffs further allege that up to the 15th of February, 1884, the defendant Alexander Furbee was well known in the neighborhood in which he lived for years as a man who was utterly impecunious, and that he was never known or supposed to be possessed of the sum of one thousand dollars, or of any other sum of money beyond what was necessary to keep himself and family, and that said Furbee never paid to said Barr any consideration price whatever for the realty conveyed to him by said Barr by said deeds, and that said conveyances are fraudulent so far as they affect the interests of complainants, and should be so considered. Plaintiff, after exhibiting copies of certain judgments owned by some of the defendants, allege that on the 8th day of April, 1884, the defendant David Barr and wife, by deed of that date, conveyed to defendant R. McEldowney, as trustee, the said four and twelve acre tracts of land to secure the defendants Vance, Hughes & Co. in the sum of four hundred and forty-three dollars and twenty eight cents, which amount they allege is yet unpaid; that said tracts of four and twelve acres are of small value, and would not sell for anything like a sufficient amount to discharge the plaintiff's liens.

On the 10th day of June a decree was entered in said cause directing a commissioner to ascertain and report (1) the amount and value, and annual rental value, of any and all realty owned by the defendant David Barr lying in Wetzel county, W. Va.: (2) any and all judgment liens existing against said David Barr, with their respective dates, priorities, and amounts, including interest and costs; (3) the time or date of the contraction by the defendant David Barr of the debts or liabilities for and on account of which the judgments set up in the bill and exhibits were obtained; (4) the date of the conveyances made by said David Barr to the defendant Alexander Furbee, and what actual consideration was paid by said Alexander Furbee to said Barr for the realty conveyed by said conveyances, and from whence the money was derived by said Furbee.

On the 31st of May, 1888, the defendant Alexander Furbee filed his separate answer to said bill, denying any knowledge of the judgments mentioned in plaintiffs' bill as

rendered against the defendant David Barr, and disclaiming any knowledge as to when the debts were contracted by the defendant David Barr upon which the judgments named in the bill were rendered, and claimed that at the time he purchased said forty six and one half acres of land, and the property in Wileysville, he did not know that the defendant David Barr was indebted to any person, or that he was insolvent; and he denied that said conveyances were made to him by the defendant David Barr for the express purpose of avoiding the effect and lien of said judgments, and he further claimed that the purchase of the property by him from the defendant Barr was a fair and *bona fide* transaction, and that he has paid all of the purchase-money for said property. He also denied the allegation in the bill as to his impecuniosity, or that he was never supposed to have so much as one thousand dollars, or any other sum beyond what was necessary to keep himself and family, but claimed that he at all times had all the money he needed. He further denied that said conveyances to him from the defendant Barr were purely gratuitous and fraudulent, or that said Barr had retained the possession of all of said real estate from the time of said conveyances up to the institution of this suit, or that he has never exercised any rights of ownership over the same, but claimed that he had at all times since said purchase exercised acts and rights of ownership over the same. He admitted that said David Barr had remained in possession of a portion of said property, but under contract of rent with respondent, and he denied all fraud in the purchase by him from said Barr of the real estate in the bill mentioned.

The commissioner, to whom was referred said matters of account by said decree reported that the defendant Barr was the owner of two tracts of land in Wetzel county—one containing twelve acres, and the other four acres, of the aggregate value of three hundred and ten dollars, and that on the 8th day of April, 1884, said Barr executed a deed of trust on said tracts of land to secure to Vance, Hughes & Co. the amount of two notes aggregating the sum of five hundred and forty seven dollars. He also ascertained the date and amount of the judgments obtained by the plain-

tiffs and others against the said David Barr, and when the debts were contracted by said Barr upon which said judgments were predicated, ascertaining that said debts were contracted in the months of September and October, 1883, although judgments were not obtained upon the same until May, 1884, August, 1884, February, 1885, etc.; and the deeds from said Barr and wife to the defendant Alexander Furbee were made and executed on the 15th and 16th days of February, 1884, for the forty six and one half acre tract of land, and the town lot in the town of Wileysville; the aggregate consideration being one thousand dollars, expressed in said deeds. Said commissioner also found that the conveyance of the said forty six and one half acre tract of land and said town lot was made in consideration of said one thousand dollars, which said Furbee derived by trading and dealing in stock. To this report the plaintiffs excepted, because said commissioner found that the actual consideration paid by Alexander Furbee for said town lot and said forty six and a half acres of land was one thousand dollars, and because said commissioner found that said one thousand dollars was derived by said Alexander Furbee by dealing in stock, and because said report was contrary to the evidence.

On the 29th day of September, 1888, a decree was rendered in said cause dismissing the plaintiffs' bill as to the defendant Alexander Furbee, and overruling the exceptions to said commissioner's report, and directing a sale of said four and twelve acre tracts of land to satisfy first said trust-lien of five hundred and forty seven dollars, and then said other liens in the order in which they are named in said report.

From this decree the plaintiffs applied for and obtained an appeal to this court.

The question we are required to determine in this case is whether the conveyances made by David Barr, the defendant, to his son-in-law, Alexander Furbee, of the forty six and a half acre tract of land, and the town lot in the town of Wileysville, mentioned and described in the plaintiff's bill, were fair and *bona fide* transactions, or fraudulent and executed with intent to hinder, delay, and defraud the plaintiffs, and other creditors of the said David Barr.

These questions in regard to fraudulent conveyances are usually difficult to determine, for the reason that when a party becomes indebted and sets about shielding his property from his creditors, he usually moves with caution and conceals his motives and intentions in such a manner as to render direct proof of his intentions almost unattainable. For this reason courts in arriving at conclusions are almost invariably compelled to resort to the surrounding circumstances, which on account of the secrecy of such transactions are often the only evidence attainable. Wait, in his work on Fraudulent Conveyances & Creditor's Bills, (pages 22 and 23,) says, quoting from STORY, J.:

"'Fraud is always a question of fact with reference to the intention of the grantor. Where there is no fraud, there is no infirmity in the deed. Every case depends upon its circumstances, and is to be carefully scrutinized, but the vital question is always the good faith of the transaction. There is no other test.' Fraud does not consist in mere intention, but in intention carried out by hurtful acts. 'Fraud or no fraud is generally a question of fact to be determined by all the circumstances of the case.' Direct proof of positive fraud, in the various kinds of covinous alienations which we are to discuss, is not, as we shall presently see, generally attainable, nor is it vitally essential. The fraudulent conspirators will not be prompted to proclaim their unlawful intentions from the house-tops, or to summon disinterested parties as witnesses to their nefarious schemes. The transaction, like a crime, is generally consummated under cover of darkness, with the safeguard of secrecy thrown about it. Hence, it must be scrutinized and judged of by all the surrounding circumstances of the case. The evidence is 'almost always circumstantial. Nevertheless, though circumstantial, it produces conviction in the mind often of more force than direct testimony.'"

The circumstances disclosed by the evidence adduced in this case are, in substance, as follows: The defendant Barr was the owner of two tracts of land, one containing four acres and the other twelve acres, situated in Wetzel county, on which he executed a deed of trust to secure to Vance, Hughes & Co. the payment of two promissory notes

shown by the commissioner's report to aggregate five hundred and forty seven dollars which tracts he had purchased in the year 1883 for the sum of two hundred and forty dollars, and, as a matter of course, would leave nothing for other creditors after said trust debt was paid. Said David Barr also owned a tract of land in said county containing forty six and a half acres, which he had purchased in April, 1883, for the sum of nine hundred and thirty three dollars and twenty cents, also a house and lot in the town of Wileysville, in said county, which he had purchased in December, 1882, for two hundred and fifty dollars, and erected thereon a store-house and grain-house, which, from his description, cost five hundred dollars or six hundred dollars. Having contracted a large indebtedness to the plaintiffs and other parties represented in this suit, in the fall of 1883 he conveyed said lot, with its improvements, and said forty six and a half acre tract of land, for the pretended consideration of one thousand dollars, to his son-in-law, the defendant Alexander Furbee, and acknowledged the receipt of the entire purchase-money on the face of the deed. But it appears in the evidence that said recital in said deed was false, and both Barr and Furbee claim that only three hundred dollars of said purchase-money was paid at the time said deed was executed, said Barr being indebted to said Furbee to that extent, and that in fact no money passed between them at the time said conveyance was made. Barr and Furbee both state in their evidence that said Barr borrowed three hundred dollars from Furbee on the 25th of January, 1884, and executed to him his note of that date for the same; and it appears that about the last of January or first of February, 1884, said Barr sold his entire stock of merchandise, which was in the store house on said lot, to said defendant Alexander Furbee; that said goods invoiced six hundred dollars or seven hundred dollars—said invoice was made by said Barr and Furbee alone, in the absence of any other witnesses; that no cash was paid by said Furbee for said goods, but they state that said Furbee assumed the payment of a debt of four hundred and seventy dollars which said Barr owed L. S. Delaplaine, Son & Co.; that said

Furbee did not pay for the goods at the time of the sale to him, but assumed said debt to Delaplaine, Son & Co., and afterwards Furbee sold the goods to Ober & Kirkland, and the proceeds of said store paid the said note to Delapline, Son & Co. Nothing seems to have been thought or said about the three hundred dollars which had just been loaned by Furbee to Barr when Furbee purchased the goods, but Furbee was requested to lift the Delaplaine Son & Co. note as part payment therefor, taking the goods at the invoiced price of seven hundred dollars. This could have been done, and still have left two hundred and thirty dollars to be applied as a credit on the three hundred dollar note which Barr says he owed Furbee for borrowed money ; but, notwithstanding this fact, said three hundred dollars was left to stand without a credit and in its entirety to constitute the cash payment on the town-lot and tract of forty six and a half acres of land, which was conveyed fifteen days afterwards to said Alexander Furbee by said Barr. Another circumstance, which may be regarded as very singular, is this.

On cross-examination the defendant David Barr says he received the note of three hundred dollars which he had given Furbee for borrowed money as the cash-payment on said land, when it will be perceived that said note was not executed by said Barr to Furbee for nine days after said conveyances were made, and Barr says he borrowed the three hundred dollars from Furbee on the day the note was given, so that Barr did not owe Furbee when the conveyances were made. Again, said Barr remained in possession of said real estate and exercised control and management of the same, although he claims to have rented the property and explains a contract made with Furbee & Johnson on the 29th of October, 1884, to lease them grounds on Hartey's run for saw-mill and lumber-yard, also permitting said parties to haul logs through said land, by claiming that he had rented said lands, and was to straighten the creek, and the parties, to whom said lease and permission were given, agreed to perform the labor of straightening said creek.

Another fact disclosed by the record is that at the time Barr sold said real estate and merchandise to Furbee, his

son-in-law, according to their own showing, none of the purchase-money was paid; and, although it is claimed that said note of three hundred dollars was surrendered as part of the purchase-money, yet it appears that at that time said Furbee owed said Barr a balance of two hundred and thirty dollars on said merchandise, and yet no lien of any character was retained by said Barr to secure the residue of the purchase-money for said land, but the defendant Barr remained in possession of said land and town lot, and at once became a lessee of the same from his said son-in-law, Furbee, although none of the purchase money had been paid, and he had no security therefor. Yet, when he executed the deed to said Furbee for said lot and land, the receipt of the purchase money was acknowledged in both deeds. In addition to the other facts and circumstances we have detailed, it may be noticed that, so far as appears from the record, the defendant Barr, being indebted to the plaintiff and various other creditors, disposed of all of his estate, both real and personal, to his son-in law, Furbee, and appears to have provided for the payment of but one of his creditors.

In Wait on Fraudulent Conveyances, § 231, the author quotes from LOWELL, J., *in Re* Alexander, 4 N. B. R. 181, as follows: " 'I have often decided that the conveyance of the whole property of a debtor affords a very violent presumption of a fraudulent intent, so far as existing creditors are concerned.' " In the same section the author says: "Such a transfer must, however, be regarded as altogether unusual and extraordinary. The instances in which such transactions would occur in the usual course of business are very infrequent; and, when the alieniation proceeds from an embarrassed debtor, it creates a presumption of dishonesty and fraud." See *Bibb* v. *Baker*, 17 B. Mon. 305; *Wheelden* v. *Wilson*, 44 Me. 20; *Hughes* v. *Roper*, 42 Tex. 126.

In the case of *Goshorn's Ex'r* v. *Snodgrass*, 17 W. Va. 717, we find this Court held, in the fifth and sixth points of the syllabus, as follows: "Although a deed be made for a valuable and adequate consideration, yet if the intent of the grantor, with which it is made, be dishonest or unlawful, the deed will be deemed fraudulent, if the grantee had

notice of such intent. (6) Though the proof of fraud rests on the party who alleges it, circumstances may exist to shift the burden of proof from the party impeaching the transaction onto the party upholding it." And, in delivering the opinion of the Court, HAYMOND, J., on page 770, says: "If the evidence established a *prima facie* case of fraud, or shows that an instrument is false in any material part, the burthen of showing that the transaction was fair lies upon the party who seeks to uphold it." Referring to Kerr, Fraud & M. 385, 386.

Wait on Fraudulent Conveyances, in enumerating the *indicia* or badges of fraud, (page 332.) says : "It may be observed that the absence of memoranda, or of any record of the consideration, the failure to take an account of stock, and no agreement as to the exact terms of settlement; a false admission of the receipt of the consideration ; * * * receiving the rents and managing the estate by the vendor after the alleged sale, under an assumed agency from the vendee, but without any evidence of a genuine agency other than the uncorrobated assertion of the party ; absence of means in the vendee; * * * all these are *indicia* of fraud upon creditors." And Bump on Fraudulent Conveyances, (page 115,) speading of "the burden of proof," says : "The presumption is not merely a presumption of fraudulent intent on the part of the vendor, but also of a concurrence in that intent on the part of the vendee. The possession in the vendor, therefore, is all that need be shown in the first instance by the creditor contesting the validity of the transaction ; and, that being shown, the statute presumes it to be fraudulent. The burden is then thrown upon the vendee to show, from all the circumstances surrounding the transaction, its true character, in order to repel the presumption of fraud." And the tendency of the decisions in this State with reference to the presumption raised by the vendor retaining possession of real estate sold by him at a time when he is insolvent, or largely indebted, without making provision for his creditors, has been to create a presumption of fraud, and to require clear proof by the vendee seeking to sustain the deed of the *bona fides* of the transaction.

In the case of *Knight* v. *Capito*, 23 W. Va. 639, this Court held, in the fourth point of syllabus : "If an insolvent grantor, justly indebted to one of his creditors in a comparatively small amount, convey to him all of his property, or the greater portion thereof, in satisfaction of his debt, for a nominal consideration, falsely recited in the deed, and claimed by the grantee, to have been in hand paid, equal in value to that of the property conveyed, but largely in 'excess of the debt actually due such creditor, and he accepts the same, such deed, as to the other creditors of the grantor, will be held to be fraudulent and void, as the necessary effect of such deed is to hinder, delay and defraud such other creditors ; and the grantor and grantee in such deed will be held to have intended the necessary result of their wrongful act."

Now, if the defendant David Barr, in making the conveyance of all of his real estate to his son-in-law, Furbee, had had the decision of this court before him, and sought to make his acts in conveying his realty conform to the circumstances detailed in the case of *Knight* v. *Capito* with reference to his creditors, I do not think he could have done so any more accurately than he has done; the only difference being that in the case of *Knight* v. *Capito* the conveyance was made to a son, and in the case under consideration it was made to a son-in-law. In the case under consideration, there can be no question that David Barr was insolvent. It is only claimed that he owed Furbee three hundred dollars, and it is admitted that nothing outside of said three hundred dollars was paid on the purchase money at the date of said conveyance, and it is shown that Barr was entitled at the date of said purchase to a credit of two hundred and thirty dollars on that three hundred dollars debt by reason of the balance due to him from Furbee on the goods ; and yet the receipt of the entire amount of the purchase-money, amounting in the aggregate to one thousand dollars, for said lot and forty six and a half acre tract of land, was acknowledged by said David Barr in the face of said deed. At the time of this conveyance, the evidence shows that said David Barr was indebted in the sum of about fifteen hundred dollars. The

weight of evidence in the case seems to me to demonstrate clearly the impecuniosity of Furbee at the time of said pretended sale. He owned no realty, and was taxed with only five hundred dollars of personalty, in 1883, and the entire chain of circumstances in the case point to but one conclusion, and that is that the conveyance made by David Barr to his son-in-law, Alexander Furbee, for the pretended consideration of one thousand dollars, to the exclusion of the plaintiffs and other *bona fide* creditors of the said David Barr, was intended to hinder, delay, and defraud said creditors, and the grantor and grantee in said deed must be presumed to have intended the necessary result of their wrongful act; and the decree complained of must be reversed so far as it dismissed the plaintiffs' bill as to the defendant Alexander Furbee, and overruled the exceptions to the commissioner's report, and confirmed the same, and the said deeds of conveyance from the defendant David Barr to the defendant Alexander Furbee are considered and held to be void as to the creditors of the defendant David Barr; and this cause is remanded to the Circuit Court of Wetzel county for further proceedings to be had therein in accordance with the principles herein announced, and the appellees David Barr and Alexander Furbee must pay the costs incurred in this court.

REVERSED. REMANDED.