# CHARLESTON.

## RADCLIFF v. CORROTHERS.

Submitted January 15, 1890.—Decided March 15, 1890.

1. AMENDMENT—PLEADING—CROSS-BILL — ANSWER—NEW MAT-
TER.
   Where an amended answer is filed by a defendant in the nature of a cross-bill, praying affirmative relief, such amended answer should be confined to the matters contained in the original bill and answer, and should not introduce new and different matters not embraced therein.

2. CO-DEFENDANTS—PLEADING.
   There can be no decree between co-defendants, unless the equities between the defendants arise out of the pleadings and proofs between the plaintiff and defendants.

3. CO-DEFENDANTS.
   There can be no decree between co-defendants where there is no decree in favor of the plaintiff.

4. AMENDMENT—ANSWER—CROSS-BILL—NEW MATTER.
   A case in which the amended answer filed in the nature of a cross-bill alleges new matter, which constitutes a clear departure from the issues and purposes of the original suit, and should have been rejected.

*O. Johnson* and *Berkshire & Sturgiss* for appellant.

*P. H. Keck* for appellee.

ENGLISH, JUDGE:

This case was before this Court upon an appeal obtained by Mary A. Poundstone, and was decided on the 5th day of

April, 1884, a report of which decision appears in 23 W. Va. 724. Richard S. Radcliff claimed in his bill filed in said suit that he formed a partnership with Geo. W. Poundstone, a resident of the state of Pennsylvania, for the purpose of buying and selling coal on the Monongahela and Ohio rivers, in the state of West Virginia and other states bordering on the Ohio river, agreeing that they would furnish equal amounts of money to conduct said business, and share equally in the profits which might result from the same, which business was to be conducted in the name of said Richard S. Radcliff, and was to be managed by him; that at the time said partnership was formed said Radcliff was indebted to said George W. Roundstone and Mary, his wife, in the sum of $3,240.00, evidenced by a promissory note made by said Radcliff and John W. Corrothers, dated the 10th day of June, 1872, and payable to the said George W. Poundstone and Mary A. Poundstone, one year after the date thereof, for the said sum of $3,240.00, said John W. Corrothers being the security on said note. It was therefore agreed that said Radcliff should supply funds to the said Poundstone, to be by the latter put in said copartnership business, and that the one half of the money or capital so advanced and put into said business by plaintiff should be charged against said promissory note, and credited thereon as payments, either in part or in full, according to the amount of said payments, of which agreement said Mary A. Poundstone had full notice, and concurred therein, and consented to said arrangement, and expressly agreed that all money so furnished to her said husband by plaintiff, in pursuance of said agreement, should constitute credits upon said promissory note, and that plaintiff, confiding in said agreement, advanced to said copartnership, to be used in their business, the sum of $6,600.32, the one half of which was furnished as an advance to said George W. Poundstone upon the faith of the promises and agreement aforesaid; that the same should be credited upon said promissory note; and plaintiff claimed that, for the advances so made, he requested the defendants to enter a credit upon said note, which they declined to do, or to surrender said note, but assigned said note, which was also indorsed by Samuel Thompson to the Discount & Deposit

Bank of Brownsville, and by said bank the same was placed in the possession of the First National Bank of Fairmont, in the state of West Virginia, for collection, and in 1873 John W. Corrothers, who was surety on said note, paid the whole amount of the same to the First National Bank of Fairmont, and took up the same; that neither said Samuel Thompson nor the said Discount & Deposit Bank of Brownsville had any interest in said note at the time of its payment by said Corrothers, nor at any time, but that the same was only placed in said Discount & Deposit Bank for collection, and that the funds subject to the plaintiff's equity were the funds of the said George W. Poundstone and Mary Poundstone, and that plaintiff, having fully paid off said note, was entitled to have the same surrendered to him for cancellation long before its payment by said Corrothers, his surety as aforesaid, and that said proceeds of said note then in possession of the First National Bank of Fairmont were subject to plaintiff's equity, and that he was entitled to pursue and reduce the same to possession, or to attach the same to answer any decree he might obtain against said George W. Poundstone for the said sum of $3,300.16, and the further sum of $50.00, in the aggregate $3,350.16 justly due to plaintiff from said G. W. Poundstone, on account of the advances aforesaid; said George W. Poundstone, Mary Poundstone, Samuel Thompson, and the Discount & Deposit Bank of Brownsville being residents of the state of Pennsylvania. He prayed that an attachment might issue directed to said First National Bank of Fairmont, requiring it to answer, and say what funds, money, or property of the said Mary Poundstone, George W. Poundstone, or the Discount & Deposit Bank of Brownsville or Samuel Thompson are in its possession or under its control, and that said fund be subjected to the payment of plaintiff's claim.

The defendant Mary A. Poundstone answered said bill, denying all of its material allegations, claiming that the sum of $3,240.00 was loaned to plaintiff out of her separate estate, and that she took plaintiff's note therefor, with John W. Corrothers as his surety, and that plaintiff was informed that said money was her own separate property at the time of the

loan, and the reason said note was made payable to her husband and herself was because she was about starting to Europe, and if anything happened to her while she was in Europe she wanted it so that her husband could collect the money, and there was no intention to change the ownership of the same, either in whole or in part; that said contract was made in Pennslyvania, and her rights are governed by the laws of that state, under which she is now, and always has been, entitled to said money, free from the control of her husband ; and she denied that she had ever done anything which would make said money liable in any way to the payment of any debt or liability of her said husband, or to be incumbered in any manner by him, and that she is justly entitled to said money in said bank. She denied any knowledge of said alleged copartnership, but claimed that her said husband loaned money at different times to plaintiff amounting to $1.100.00, and that in February, 1873, they had a settlement, when it was ascertained that plaintiff owed her husband $1,827.00 ; that he paid $500.00 of said amount, and promised to pay the residue at different times. She denied that she ever agreed or consented that any capital or money furnished in said copartnership by plaintiff should be credited on said note for $3,240.00, or should constitute credits on said note, and that plaintiff never pretended to have any offsets against said note, and she never heard of any until said note was sent to said First National Bank of Fairmont for collection, where she sent it at plaintiff's request. That said Corrothers paid said money into bank, and took up said note at the request of plaintiff, so that he might bring said suit, and attach the money; and she denied, further, that plaintiff ever paid one cent to her or her husband which should have been credited on said note, and she prayed that the money so paid into said First National Bank of Fairmont be decreed to her. Said First National Bank of Fairmont answered, admitting the collection and possession of the money due upon said note, and expressed its readiness to account for same, with four per cent. interest thereon from October 17, 1873. John W. Corrothers also answered said bill, saying he believed its allegations were true, and that he paid said note as the surety of plaintiff, with its interest, into said bank, to save him-

self from suit and vexation, and that plaintiff became liable to him for the amount thereof.

Numerous depositions were taken, both by plaintiff and defendant, and said cause was referred to a commissioner to settle the partnership accounts between the plaintiff and George W. Poundstone; and on the 21st day of April, 1876, said cause was finally heard upon the report of said commissioner, and the papers theretofore read ; and the court decreed that the plaintiff was entitled to recover from George W. Poundstone the sum of $3,787.13, and that the fund attached in said cause in the possession of the First National Bank of Fairmont was in equity subject to the payment thereof; and decreed in his favor for that amount, with interest thereon from the first day of said term of court, and directed the amount in possession of said bank, except sufficient to pay the costs, to be paid to plaintiff.

From this decree said Mary A. Poundstone obtained an appeal to this Court on the 23d day of December, 1880, and on the 5th day of April, 1884, said appeal was decided, reversing the decree of the Circuit Court of Marion county; this Court holding that the appellant was entitled to all of the proceeds of her note of $3,240.00, with the interest thereon accrued, discharged of the lien of the plaintiff's attachment, less such reasonable charges as the First National Bank of Fairmont might be entitled to for the collection thereof; and, if the whole or a part thereof had been paid over to the plaintiff, she was entitled to a decree against him for the amount so received by him, with interest from the time he received the same, together with her costs in said Circuit Court expended ; and that, if any part of said proceeds remained in said bank, she was entitled to a decree against it for such proceeds, with interest from the time the same was received by it, and the cause was remanded for further proceedings to be had therein.

The mandate from this Court was entered in the Circuit Court of Marion county in vacation, on the 19th day of May, 1884, and on the 8th day of July, 1884, the said Mary A. Poundstone moved the said court, then in session, to re-docket said cause, and for leave to file an amended answer to the complainant's bill; which motion was allowed, and said

defendant filed her amended answer, which was in the nature of a cross-bill, in which she refers to her former answer, and prays that it may be read as part of her amended answer; recites the substance of the final decree rendered in said cause on the 26th day of April, 1876; the difficulties she encountered in obtaining an appeal to this Court from said decree; and states that, in 1884, this Court reversed and annulled the decrees complained of, and remanded the cause to be further proceeded in, in accordance with the principles announced, and directions given in the written opinion thereof, and decided that she was entitled to all of the proceeds of the said note of $3,240.00, with interest thereon accrued, discharged of the lien of the plaintiff's attachment, less such reasonable charges as the said First National Bank of Fairmont might be entitled to for the collection thereof; and, if the whole or any part of said proceeds had been paid to plaintiff, she was entitled to a decree against him for the amount so received, *etc.*; reciting the decree of this Court, and averring that all questions raised by the original bill and answer had been finally determined by this Court, save and except only where and in whose hands is the proceeds of said note for $3,240.00, and accrued interest thereon, and against whom should the recovery now be had for said proceeds. She then avers her belief that she is entitled to recover the whole of said proceeds against the First National Bank of Fairmont—*First.* Because said bank received said note for collection, and ought to have collected the same by use of due diligence on its part. *Secondly.* Because said bank made some kind of fictitious outside or fraudulent arrangement with said Radcliff and his security, John W. Corrothers, or one of them, by which said Corrothers pretended to formally pay into said bank the amount of said note, for the fraudulent and dishonest purpose on the part of said Corrothers and Radcliff (at least) to create a pretense or ground for suing out an attachment in this cause, and to attach said money, and thereby cheat and defraud defendant out of the same; and that she is advised, and so charges as true, that, as part of said fraudulent scheme, the said Corrothers, either at once, or very soon after he put the money in said bank, he in fact either drew the same money or amount of money

out of said bank again, or took from said bank certain ten per cent. (Iowa) bonds in lieu of the money so paid into said bank. *Thirdly.* Because she was informed and believed, and so charged as true, that said bank still had the legal custody and control of said note or its proceeds, in this: that when it paid or passed over the proceeds of said note to said Corrothers, either in money or in bonds as aforesaid, the said bank took from said Corrothers or Radcliff, or both of them, a bond in a penalty sufficient to cover the said proceeds, conditioned to refund to or indemnify said bank for said proceeds or formal payment, in case it should be required to pay the same, or any part thereof, to this defendant, or with conditions of substantially like import and obligation, which bond was never filed with the papers of the cause, but was taken by said bank for its own security or indemnity, and it still holds it; and she prayed that said bank be compelled to file with the papers of this cause said bond, or any other bond or obligation that said bank did in fact take for its security or indemnity in the premises, or, if it should be lost, mislaid, or destroyed, let said bank, as well as said Radcliff and Corrothers, each answer, and say what has become or it or them, and also disclose the purport or contents of same; and she further prayed that, in case it should turn out on the hearing of the cause that said bank had not the custody or control of said proceeds, or any part thereof, but that in good faith it paid out the same to said Radcliff or said Corrothers, with or without taking any bond of indemnity from them, or either of them, for so doing, so as to release or exonerate said bank from a recovery now against it, that then she might be remitted to her rights to recover the same against said Radcliff and Corrothers: (1) Because they are her lawful debtors, by reason of the execution of said note to her as aforesaid; (2) because of said fraudulent and dishonest scheme, so concocted to get said note sent to said bank for collection, and the pretended or formal payment of said note into said bank by said Corrothers, for the base and dishonest purpose of having it attached by said Radcliff on a false and fraudulent charge of indebtedness by her to said Radcliff, and for the like fraudulent purpose of withdrawing from said bank the money or its value, the said Corrothers, as well as said

Radcliff and said bank, then knowing that said Radcliff was hopelessly insolvent. She asked that she be allowed to file said answer to plaintiff's bill, alleging said new matter, and praying said affirmative relief to have the effect of a cross-bill as to such affirmative relief; and she further prayed that said Radcliff, Corrothers, and said bank be each compelled to disclose and state any and all manner of schemes or devices, bonds or contracts, oral or written, by and between them, or any of them, in relation to the payment or pretended payment into said bank of said proceeds of said note, either by said Radcliff or said Corrothers, or both, stating when and how it was done, and what amount was so paid in, and of what it consisted, and whether it was not so paid into said bank for the express purpose of enabling the said Radcliff to attach the same in this cause, and also whether said money was ever drawn out of said bank, and if so, when, how, and by whom, and under what arrangement, agreement, or device; and she prayed for general relief.

The defendant J. W. Corrothers, after reserving the benefit of all just exceptions to said amended answer, and denying the right of said defendant Mary A. Poundstone to require him to answer the same as a cross-bill, or to fix any pecuniary liability upon him because of any matter or thing alleged against him in said amended answer, filed a replication traversing all the material allegations therein contained, and the First National Bank of Fairmont, making like reservations and denying the right of said Mary A. Poundstone to file said answer as a cross-bill against it, also filed its special replication, traversing the matters alleged in said amended answer.

Numerous depositions were taken in the cause, and, among other things, it was shown that $300.00 of said money was paid by said First National Bank on the 22d of May, 1876, to James Morrow, Jr., and on September 6, 1876, $3,690.00 was paid by said bank to said Richard S. Radcliff; and, said cause having been transferred to the circuit court of Ohio county on the 14th of December, 1888, a decree was rendered therein, holding that the First National Bank of Fairmont was not liable to the demand of said Mary A. Poundstone, as claimed by her in this cause,

or for any part of the money received by it from the plaintiff, Radcliff, or the defendant Corrothers, the said money having been paid over in good faith by the said bank to the said plaintiff, and to his attorney, in pursuance of the decree of the circuit court of Marion county, before the cause was heard by the supreme court of appeals; and decreeing that the plaintiff, Richard S. Radcliff, and the defendant John W. Corrothers, should pay said Mary A. Poundstone $5,882.78, with interest from the 14th day of December, 1888, till paid, and that she recover from said Radcliff $526.15, with interest from the 14th of December, 1888, being for the sum of $300.00 paid by said bank to James Morrow, Jr., as attorney for said Radcliff, on the 22d day of May, 1876, and dismissed the bill of said Radcliff, with costs.

From this decree the defendant John W. Corrothers applied for and obtained an appeal to this Court, and the first error assigned by appellant was in permitting the said amended answer of Mary A. Poundstone, in the form it was tendered, to be filed, and also in entertaining the same, and allowing testimony in support thereof; claiming that the payment of the note by appellant had been passed upon by this Court, and was *res adjudicata;* that a new case can not be made by an amended answer, any more than it can be done by an amended bill. Upon the question of the conclusiveness of the decree of this Court in the case of *Henry* v. *Davis*, 13 W. Va. 230, it was held that the decree of this Court, upon a question decided by the court below, is final and irreversible; and upon a second appeal in the cause the question decided upon the first appeal can not be reviewed; and in *McCoy* v. *McCoy*, 29 W. Va. 794, (2 S. E. Rep. 809) it was held the conclusiveness of the decree extends not only to what may appear on its face, but to every allegation which was made on one side and denied on the other. See, also, *Seabright* v. *Seabright*, 33 W. Va. 152, (10 S. E. Rep. 265.)

Did the court err in allowing the defendant Mary A. Poundstone to file the answer in the nature of a cross-bill, which she did in this case? In the case of *Hansford* v. *Coal Co.*, 22 W. Va. 70, this Court held that a "cross-bill should be confined to the matters stated in the original bill, and should not introduce new and distinct matters not embraced therein,

and, if it does so, no decree can be founded upon those matters, for as to them it is an original bill," also that "the province and only legitimate use of a cross-bill is to aid in the defence of the original suit, and the matter of it can not be more extensive than the defence of the original bill;" and, further, that "when the equities between the defendants do not arise out of the pleadings and proofs between the plaintiff and defendants, there can be no decree between co-defendants." Now, it will be perceived that the object of the original bill filed by the plaintiff, Radcliff, was to recover an amount he claimed to be due him from the defendant George W. Poundstone on a settlement of certain partnership matters between them; and he claimed that the note for $3,240.00; executed by him with John W. Corrothers as surety, to said George W. Poundstone and Mary A. Poundstone, had been paid off by certain credits he was entitled to by reason of money advanced in said partnership transactions, and which said Mary A. Poundstone agreed might be so credited; and he prayed that said money in the hands of the First National Bank of Fairmont, collected on said note from John W. Corrothers, should be subjected to the payment of the balance due him on settlement of said partnership transactions; and said Mary A. Poundstone in her answer to said original bill claimed that she was entitled to the proceeds of said note as her separate property; denied any knowledge of said partnership, or that any money or capital that was put into the same was by her consent to be credited on said note; and alleged that the said Corrothers paid off said note at the request of plaintiff, so that plaintiff might attach the proceeds of said note in the hands of the said bank; and she denied that plaintiff ever advanced a cent in any manner that would entitle him to a credit on said note.

These were the only matters in issue in said original cause, which came to this Court and was decided in favor of said female defendant; and in her amended answer she states that all "matters of controversy in the cause raised by the bill or original answer of this defendant have now been finally determined by the said Supreme Court of Appeals, save and accept only the question as to where or in whose

hands is the proceeds of said note for $3,240.00, and accrued interest thereon, and against whom should the recovery now be had for said proceeds." This Court, however, did decide all that was properly before it on said appeal. It decided that said Mary A. Poundstone was entitled to all of the proceeds of said note, with the interest accrued thereon, discharged of the attachment lien of plaintiff, less such reasonable charges as the said bank might be entitled to for the collection thereof; and that, if the whole or any part of the proceeds had been received by or paid over to the plaintiff, she was entitled to a decree against him for the amounts so received by him with interest from the time he received the same, together with the costs; and, if any portion of said proceeds remained in the custody of the bank, she was entitled to a decree against it for such proceeds.

The question as to where said money was at the time this Court rendered its decree was not before the Court, and, of course, it could not be decided. This Court had, however, determined that the money in controversy belonged to her, and it further decided that, if the money had been paid over to plaintiff, she was entitled to a decree against him for the amount and costs. This, however, she did not desire, because it appears the plaintiff was insolvent, and she seeks by her amended answer to make a new case, and asserts her right to recover against said bank: (1) Because said bank received said note for collection, and ought to have collected it, by use of due dilligence. (2) Because said bank made some kind of fictitious outside or fraudulent arrangement with said Radcliff and his security, John W. Corrothers, or one of them, by which said Corrothers pretended to formally pay into said bank the amount of said note, for the fraudulent and dishonest purpose on their part to create a pretense or ground for suing out an attachment in said causes and attaching said money, and thereby to cheat and defraud her out of said money; and she charges that either at once, or shortly thereafter, he drew said money out of said bank again. (3) Because, as defendant charges, said bank still has the legal custody and control of said note or its proceeds, having taken an indemnifying bond from said Corrothers or Rad-

cliff, or both, to protect it in case it should be required to pay the same, or any part thereof, to defendant.

Now, in this case, new issues seem to be presented, and a new case is made by the new matter alleged in said amended answer. Said bank is charged with want of diligence in collecting said note, when she alleges in her original answer that the defendant Corrothers, the surety of plaintiff in said note, paid the same off at the instance of plaintiff, and took up the note. She alleges that said bank had the legal custody of said note, and, as it was paid off and taken up, it must have been paid to said bank; and yet she complains that this Court did not decide in whose hands is the proceeds of said note for $3,240.00, when her own answer in the original cause shows that she knew where said money was, and in a cross-bill a party can not question what he has admitted in his answer to the original bill. *Hudson* v. *Hudson*, 3 Rand. (Va.) 117. Regarding this amended answer as a cross-bill, it is apparent that it is not confined to the matters stated in the original bill or answer, but introduces new and distinct matters, charging said bank with fraud and collusion with said Corrothers and Radcliff, charging that said bank has a secret indemnity in the shape of a bond, and seeking to recover said amount from said Corrothers on account of said fraudulent scheme to get said note sent to said bank for collection, and the formal payment of said money into bank for the dishonest purpose of having it attached by said Radcliff on a false and fraudulent charge of indebtedness, when they all knew said Radcliff was hopelessly insolvent. These allegations constitute new matter that was not contained in the original bill or answer, and no decree could be founded on them. See *Hansford* v. *Coal Co., supra;* Story, Eq. Pl. § 401; *Piercy* v. *Beckett*, 15 W. Va. 444.

In this case there was no decree in favor of the plaintiff, and there could for that reason be no decree between the co-defendants. In the case of *Watson* v. *Wigginton*, 28 W. Va., 568, GREEN, J., delivering the opinion of the Court, said: "As I understand the law, there can be no decree in any case between co-defendants, where no decree can properly be rendered in favor of the

plaintiff, whether this arises from the fact that the bill does not make out a cause which entitles him to relief, or from the fact that the proof does not sustain the case as set out in the bill;" referring to *Hansford* v. *Coal Co.*, 22 W. Va., pt. 3 of syllabus, p. 70; *Ould* v. *Myers*, 23 Gratt. 384, pt. 3 of syllabus, and p. 404; also to *Hubbard* v. *Goodwin*, 3 Leigh, 522, 523, where TUCKER, J., says: "I am clearly of opinion that the court ought not in this cause to undertake to adjust the transactions between the (co-defendants) Hubbard and Kennedy. None of the cases in which the court has decreed between defendants have gone so far. I think it has been done in no case where the plaintiff was not entitled to a decree against both or either of the defendants." See, also, *Roots* v. *Salt Co.*, 27 W. Va. 483, pt. 1 of syllabus. See, also, 2 Bart. Ch. Pr. 805.

The matters set up in the amended answer of the defendant Mary A. Poundstone constitute an entire departure from the issues made by the original pleadings and the purposes of the original suit. This Court on said appeal had determined that said female defendant was entitled to all of the proceeds of her note, and that, if said proceeds were in the hands of plaintiff, she was entitled to a decree against him for the amount, with interest from the time he received it; and that if any part of said proceeds was in custody of said bank she was entitled to a decree against it for such proceeds, with interest from the time the same was received, and that decision was final as to the parties to said suit, but, instead of abiding by said decision, she filed this amended answer in the nature of a cross-bill, setting up new matter, and seeking thereby to obtain an additional decree against her co-defendant, Corrothers; and that, too, not by reason of any equities which arise out of the pleadings between the plaintiff and defendants, which we have seen can not be done. If she had a cause of action against said Corrothers, she should have brought an independent suit. She could not obtain the relief prayed for in this suit, which was instituted for a different purpose, and which was ended, so far as the defendant Corrothers was concerned, because it was alleged in the bill and conceded in the answer that Corrothers, as surety for Radcliff, had paid said note to the party author-

ized to collect it, and taken it up, and, under the state of pleadings existing when the cause came to this Court, no decree could be rendered against said Corrothers; and the female defendant in her cross-bill can not be heard to allege new matter, and make a new case against him; neither can she be heard to complain of the said bank being negligent in making said collection, when she admits in said answer that said money so paid off was in the hands of said bank, to which it had been sent for collection; and the Circuit Court erred in allowing said answer to be filed, and in decreeing against the defendant J. W. Corrothers.

For these reasons the decree complained of must be reversed, and the cause remanded to the Circuit Court of Ohio county for further proceedings to be had therein according to the principles announced in this opinion, and the defendant Mary A. Poundstone must pay the costs of this appeal.

REVERSED. REMANDED.