# CHARLESTON.

DOUGLASS MERCHANDISE CO. *v.* LAIRD *et al.*

(DENT, JUDGE, absent.)

Submitted September 12, 1892.—Decided April 1, 1893.

1. FRAUDULENT CONVEYANCE—DEED OF TRUST—ASSIGNMENT.
     In this State the trustee in a deed of trust or assignment made to secure creditors is regarded as a purchaser for value, and in order to make void the deed, notice of the grantor's fraudulent intent must in some way be brought home to him or to the creditor. (p. 702).

2. FRAUDULENT CONVEYANCE—DEED OF TRUST—ASSIGNMENT.
     If such deed bears upon its face such marks or badges of fraud as to clearly show that the intent of the grantor was to delay, hinder, or defraud his creditors, such deed is fraudulent on its face, and the Court will so hold it on inspection. In such case the thing itself speaks, and conclusively proclaims the fraudulent intent; because the grantor is taken to intend what he does and also the natural or necessary consequences of his act. (p. 703).

3. FRAUDULENT CONVEYANCE—DEED OF TRUST—ASSIGNMENT.
     Where an assignee or trustee accepts the assignment or trust-deed, and such deed contains to his knowledge on its face one or more falsehoods on a material point, calculated to deceive and mislead creditors to their injury, he is treated as having notice of his grantor's fraudulent intent; because a falsehood said or done to the injury of the property rights of another is of the very essence of fraud. (p. 702).

4. FRAUDULENT CONVEYANCE—DEED OF TRUST—ASSIGNMENT.
     A case in which these rules are discussed and applied, and the deed of trust held to be fraudulent, but not on its face, and the trustee held to have had notice of the grantor's fraudulent intent.

LAIRD & TURNER for appellant cited 11 W. Va. 229; 106 Mass. 79; 2 Allen 212; 11 S. E. Rep. 39; Pom. Eq. Juris.

§ 890, 891; Id. § 894; Id. § 897; Id. 596 (n); Id. § 601; Id. § 605; Id. § 608; 29 W. Va. 702; 57 Am. Dec. 499 (note 505); 95 Ill. 298; 52 Md. 211; Boon Real Prop. § 301; 17 W. Va. 772; 19 Am. St. Rep. 322; 1 Hill 311; 83 N. Y. 31; Benj. Sales (Bennet's 1888) 445; 2 Wend. 596; Kerr Fr. &. Mis. 385; Id. 236.; 1 Dall. 67; 70 Am. Dec. 548; 10 Am. Dec. 267; 5 W. Va. 74; Bump Fraud. Conv. 115; 12 S. E Rep. 831; 28 W. Va. 753; 22 W. Va. 585; 21 N. Y. 23; 4 S. E. Rep. 436; 16 W. Va. 63; 1 Dav. 360; 23 W. Va. 645; 4 How. 242; 25 W. Va. 262; 2 Min. Inst. 988; 3 Am. St. Rep. 133; 31 W. Va. 156.

W. A. PARSONS for appellees cited 29 W. Va. 702; 22 W. Va. 356; 15 Gratt. 400; 25 W. Va. 596; Id. 717; Id. 729; 32 W. Va. 34; 84 N. Y. 522; Id. 386; 59 Am. Rep. 488; 14 S. E. Rep. 501; 11 S. E. Rep. 245; 1 Am. & Eng. Ency. L. 867; 6 Mass. 339; 26 Ill. 21; 15 Neb. 476; 11 Ia. 144; Code, c. 72, s. 6; 40 Hun. 179; 50 N. Y. 352; 23 W. Va. 771; 5 W. Va. 168; 2 Par. Con. 772, 773 (N. Y.); 21 Gratt. 349; Code, c. 125, s. 42; 6 Am. & Eng. Ency. L. 754 (n. 4); 15 S. E. Rep. 140; 58 Tex. 306; 76 Ala. 103; 58 Ia. 589.

HOLT, JUDGE.

This is a suit in equity, brought April 27, 1891, in the Circuit Court of Jackson county, by plaintiffs and appellant, the Douglass Merchandise Company, against Milton Laird, *et al.*, defendants and appellees, to set aside as fraudulent a deed of trust executed by Laird and wife on April 13, 1891, to James E. Smith, trustee, conveying certain property to secure certain creditors therein named. The Circuit Court, by decree of November 19, 1891, held, among other things, that the deed of trust was not fraudulent upon its face or fraudulent in fact (with notice thereof to the grantee or beneficiaries) and that plaintiffs were not entitled to have the deed set aside, but retained the cause to administer the trust, and from this decree plaintiffs have appealed.

The plaintiffs charge this deed of trust to be fraudulent on its face, which, if true, would be notice to every one of the grantors' fraudulent intent; for every one is presumed

to intend what he does, and also the natural and probable consequences of his act. This rule, as a legal presumption, is to some extent artificial, and to that extent objectionable, but, subject to certain qualifications, is settled as matter of authority and found necessary as a matter of general convenience in criminal cases and in *quasi* criminal cases, such as those involving actual fraud, where the intent is an essential ingredient of the crime or fraudulent act.

I take for granted that in this regard the plaintiffs in the original bill elected to rest their case upon the contention that this deed is fraudulent on its face ; for in it they nowhere allege that the trustee or any of the beneficiaries participated in the fraud or had notice or knowledge of the grantors' fraudulent intent. This is necessary in this State, where the trustee and the trust-creditors are considered purchasers for value. However, plaintiffs afterwards file an amended bill, in which, among other things, they allege, "upon the foregoing facts and circumstances surrounding said pretended assignment, that the same was made by the said Laird with the intent to delay, hinder and defraud the creditors of the said Milton Laird, and especially your orators, and that the said pretended trustee had notice thereof ;" that this fact was not within their knowledge at the time of filing the original bill, although they used all diligence to ascertain it, but were unable to do so. Even this would not be sufficient, in this State, to charge notice of the fraudulent intent on those beneficiaries who had no knowledge of the assignment or complicity in the fraud, or who repudiated it after such knowledge. As great stress is laid upon the point that the instrument bears upon its face marks of fraud, which the law regards as badges of fraud, and which need no outside evidence, and can be removed by none, I give the instrument in full, that it may speak for itself on this point ; for the court must decide this question on inspection of the deed. *Landeman v. Wilson,* 29 W. Va. 702 (2 S. E. Rep. 203).

"EXHIBIT A.

"M. F. Laird to Jas. L. Smith, Trusteee, Assignment.

"This deed, made this 13th day of April, 1891, by and between M. F. Laird and Milton Laird, of Jackson county,

and State of West Virginia, party of the first part, and Jas. L. Smith, of Wirt county, trustee, party of second part, witnesseth that whereas, the said party of the first part, M. F. Laird, doing business at Douglass, in Jackson county, West Virginia, is indebted to divers persons in considerable sums of money, which are particularly described and enumerated in Schedule A. which is attached to and made a part of this deed, and which said schedule particularly describes the said several sums of money to be paid, and which said several sums of money the said parties of the first part are at present unable to pay in full, and are at present unable to pay, and are desirous to convey all their property, both personal and real, for the benefit of their creditors, excepting only such of their property as is by the laws of the State of West Virginia exempt from attachment and execution and forced sale :    Now, therefore, the parties of the first part, for and in consideration of the premises and the sum of one dollar, cash in hand paid by the party of the second part, hereby grant, bargain, sell, and convey to the party of the second part, his heirs and assigns, all their lands and tenements, and goods and chattels, property, choses in action of every kind and description, except such only as are exempt by the laws of the State of West Virginia from attachment, execution, and forced sale.    The personal property, goods and chattels, notes and accounts of every kind and description whatsoever, are fully and particularly described and enumerated in a list attached to and made a part of this instrument, and made a part hereof, marked 'Schedule B,' and which said list or schedule particularly enumerates the different items of personal property, goods and chattels, and choses in action, notes and accounts, herein and hereby conveyed, assigned, set over, and transferred to the party of the second part, in trust and confidence to sell and dispose of the said items of personal property, and to collect the accounts and notes mentioned in Schedule B, or to sell and dispose of them, using a reasonable discretion as to the times and modes of selling the said property, and disposing of all the property hereby conveyed by public auction or private sale, using a wise discretion as to the manner of

making the sale, so as to realize the greatest amount of money for the benefit of the creditors named and enumerated in Schedule A, attached to this instrument. And the said trustee is directed to settle any accounts or notes he may think advisable, taking in settlement therefor a part for the whole if, in his judgment, the interest of the creditors will be promoted thereby, and, when said personal property shall have been sold and disposed of as provided for in this trust, and so directed by the law in such cases made and provided, then, in trust to dispose of the proceeds of the sale of said personal property, and the proceeds of the notes and accounts when collected or sold, in the following manner : First. To pay all such debts as by the laws of the United States and of this state are entitled to a preference in any cases, including taxes now assessed and due and payable. Second. To pay the costs and expenses and charges of preparing this deed and recording the same, and the costs of executing this trust. Third. To pay equally and ratably the following amounts : To D. C. Casto the sum of five hundred dollars, secured to him, and evidenced by a note bearing date on the 8th day of January, 1891, and due in nine months from date, with interest from date. A note payable to N. T. McConaughey, dated on the —— day of January, 1891, and by him indorsed, and now held by the Douglass Merchandise Company, for three hundred and eight dollars, due in eight months from date. A note payable to B. S. Whims, dated on the —— day of January, 1891, and by him indorsed, and now held by the Douglass Merchandise Company, for three hundred and eight dollars, due in fifteen months from date. The foregoing three notes to be discharged in the full from the proceeds of the property herein and hereby conveyed, assigned, and transferred. And then : Fourth : To discharge equitably and ratably the following demands out of any funds left in the hands of the said trustee after the aforesaid demands are all paid : J. W. Dils & Sons, of Parkersburg, W. Va., one hundred and thirty one dollars and eighty seven cents ; Thompson & Jackson, of Parkersburg, W. Va., two hundred and fifty three dollars and thirty three cents ; Stewart, Hackett &

Co., of Pittsburgh, Pa., fifty dollars and seventy five cents; Edmonds & Mayo, of Boston, Mass., two hundred and fifty dollars and twenty cents; St. Dennis Roller Mills, Ravenswood, W. Va., fifteen dollars; E. U. Stansberry, Middleport, O., four dollars and twenty five cents; Leon Sternberger, Huntington, W. Va., seven dollars; Ravenswood Big 4 Cigar Co., six dollars and twenty five cents—sixth in priority; and all other creditors of the parties of the first part who shall file their claims with the said trustee, where claims may have been forgotten or overlooked in the preparation of this trust. And the parties of the first part hereby constitute and appoint the party of the second part their attorney in fact, authorizing him, in the name of parties of the first part, to do any and all acts, matters, and things to carry into effect the true intent and meaning of this deed, which the parties of the first part might do if personally present acting for themselves.

"Witness the the following signatures and seals on the day and year first above written.

"M. F. Laird.     [Seal.]
"Milton Laird.     [Seal.]"

"Schedule A, including the amount of indebtedness of M. F. Laird, the party of the first part, and Milton Laird, her agent:

| | |
|---|---:|
| D. C. Casto, of Elizabeth, W. Va. | $  500 00 |
| N. T. McConaughey, upon an indorsement of a note now held by Douglass Merchandise Company | 308 00 |
| B. S. Whims, upon an indorsement of a note now held by the Douglass Merchandise Company | 308 00 |
| J. W. Dils & Sons, Parkersburgh, W. Va. | 132 87 |
| Thompson & Jackson, Parkersburgh, W. Va. | 253 33 |
| Stewart, Hackett & Co., Pittsburgh, Pa. | 50 75 |
| Edmonds & Mayo, Boston, Mass | 250 20 |
| St. Dennis Roller Mill, Ravenswood | 15 00 |
| E. U. Stansberry, Middleport, O. | 4 25 |
| Leon Sternberger, Huntington, W. Va. | 7 00 |
| Ravenswood Big 4 Cigar Co | 6 25 |

$1,835 50"

From the pleadings and proof the following facts appear: The plaintiffs, W. M. Cox and G. B. Gibbons, of Parkersburg, W. Va., late partners in trade as merchants under the firm name of the Douglass Merchandise Com-

pany, were for some time prior to the 24th of January, 1891, carrying on a general retail store at Douglass, near Ripley landing, in the county of Jackson. They were desirous of selling out and quitting the business, at that point at least, and with that object in view did not replenish their stock, but let it run down to a point at which they could sell at cost. The defendant, Milton Laird, who lived at Burning Springs, in Wirt county, had been a partner in a retail store where he lived for some year and a half, had sold out, and was looking for a place where he could begin the business again. Laird and plaintiff were strangers to each other, but Laird hearing that plaintiffs wished to sell and plaintiffs learning that Laird wished to buy, early in January, 1891, defendant Milton Laird went down the Ohio River Railroad to Ripley's landing and was shown the stock of goods of plaintiffs at their storehouse by the clerk, and informed about the business and the surrounding country. On the 22nd day of January, 1891, defendant Laird went into the office of plaintiff William M. Cox, in Parkersburg. The two went to Mr. Gibbons' store— the other partner—and talked the matter over. Plaintiffs assured him, in answer to a question, that they owed nothing on the stock of goods—nothing that would interfere in any way with his business. They then inquired into his financial ability and standing. Laird replied that he owed nothing of any note at all; that he had considerable money at interest due him from A. J. Mitchell and others, and that he was worth clear of all indebtedness, four thousand dollars; defendant going under the name of M. F. Laird, the name of his wife, and not Milton Laird, his true name. The parties went down to the store at Ripley's landing, took an invoice of the goods, and on the 24th January, 1891, the sale was closed at the price of one thousand three hundred and sixty six dollars and and seventy cents—some little under cost. According to contract agreed on Laird paid in cash two hundred and thirty five dollars, gave two notes, made by A. J. Mitchell & Co., for one hundred and seventeen dollars and seventy-odd cents each. For the remainder he was to give three notes for three hundred and eight dollars each, payable in eight, twelve, and fifteen

months. One was drawn payable to order of N. T. Mc-Conaughey at eighteen months, one to order of B. S. Whims at fifteen months. These notes defendant took to Burning Springs, had indorsed, and brought them back, as he had agreed. Laird then asked plaintiffs to take his individual note at twelve months for the remaining three hundred and eight dollars, which was agreed to, defendant not signing his true name, Milton Laird, but M. F. Laird, which turned out to be the name of his wife, but was represented by him to be his own name. Defendant Laird took possession of the storehouse and goods at Ripley Landing on January 24, 1891, was appointed postmaster there, and gave bond under the name of M. F. Laird. Mrs. Laird was never there at any time, but, as far as the evidence shows, did not during the time leave her home at Burning Springs. He wrote a letter on March 19, 1891, from Douglass (name of the office) to Joe N. Sharpnack, saying :

"I received my commission this morning to take possession April 1. You can come down on 31st, in time to turn over the office. I sent you two hundred stamps that this office borrowed from Jackson C. H. Everything is going along smoothly.      Respectfully,

"[Signing]                    "M. F. LAIRD."

About January 27 to March 21, 1891, he bought of S. H. Maguire, salesman for Thompson & Jackson, a bill of goods amounting to two hundred and ninety one dollars and thirty two cents, representing himself as M. F. Laird—Milton F. Laird; that he had about two thousand dollars when he came down there. On January 30, 1891, R. Shaw, salesman of Edmonds & Mayo, of Boston, sold him a bill of boots and shoes amounting to two hundred and fifty dollars. He gave his net worth over liabilities at two thousand dollars. Was carrying on business for himself—for M. F. Laird, Ripley Landing, Jackson Co., W. Va. He never mentioned his wife's name. So to plaintiff G. B. Gibbons he represented himself as M. F. Laird. Under the same name he bought from defendants James A. Dils & Sons, from January 24 to February 5, 1891, one hundred and twenty two dollars and eighty one cents; of Stewart & Hackett, fifty dollars and seventy five cents; making in

all, of new purchases, about one thousand dollars. On the 13th day of April, 1891, he made the assignment in question, leaving out plaintiff's unsecured claim, except as coming in the sixth class, upon the grounds, as he alleged, that they had defrauded him to that amount in taking the invoice.

Defendant Milton Laird files in the suit what purports to be a power of attorney, dated January 16, 1891, signed "Mrs. M. F. Laird," empowering him to do and transact business in her name, but no proof of it except his own testimony.

The assignment was drawn by defendant, D. C. Casto, an attorney of Elizabeth, Wirt county, who filed his preferred debt in a note of January 8, 1891, for five hundred dollars, payable to his order at First National Bank, Parkersburgh, W. Va., in nine months. Two hundred and fifty dollars of it was for borrowed money; the balance, items of account, including twenty dollars attorneys' fees.

The trustee, J. L. Smith, was a young man, single, twenty eight years old, worth four hundred dollars or five hundred dollars, reading law at the time in Mr. Casto's office. He took possession of the storehouse and goods, as trustee, on the 17th day of April, and held them until the 27th April, 1891, when, under the order of the court in this case, they were turned over to Special Receiver Rader, who sold them for one thousand and fifty four dollars and thirty six cents, leaving, after paying costs, expenses, and his commission, eight hundred and eighty two dollars and seventy five cents in court, to be disbursed to those entitled.

Plaintiffs make Milton Laird, his wife, M. F. Laird, James L. Smith, trustee, D. C. Casto, and the other trust-creditors parties defendant. They charge that this deed of trust was made by defendants with intent to delay, hinder and defraud creditors especially the plaintiffs, giving various facts, charging that the deed is fraudulent and void on its face, as it makes no provision as to when the trustee shall take possession or the time or place of sale, with various evidentiary facts of fraud, but do not charge the trustee, Smith, or creditor Casto with notice of Laird's fraudulent intent in any way, except by saying that the deed is

fraudulent on its face, and by allegations which tend to charge Casto's debt as fraudulent.

Mrs. Laird does not answer. Milton Laird answers, denying all fraud. Casto and Smith answer, denying all fraud, and all knowledge and notice of Laird's fraudulent intent, if there was such intent. Defendants Thompson & Jackson, on May 1, 1891, filed their answer, attacking the trust-deed as fraudulent, and Casto's debt as fraudulent. Defendants James Dils & Sons filed their answer on May 2, 1891; defendants Edmonds & Mayo their answer on May 6, 1891; and on November 9, 1891, Stewart & Hackett their answer; making the same charges, and attacking the deed of trust and the Casto claim as fraudulent. All pray for affirmative relief; that the deed of trust and Casto's claim of five hundred dollars may be set aside and held for naught, *etc.*

On the —— day of June, 1891, the plaintiffs filed an amended bill, in which they repeat the charges of their original bill, and make the distinct charge of some new facts; and it contains the following: "Your orators would aver upon the foregoing facts and the circumstances surrounding said pretended assignment that the same was made by the said Laird with intent to delay, hinder and defraud the creditors of the said Milton Laird, and especially your orators, and that the said pretended trustee had notice thereof."

Trustee Smith did not answer the amended bill, although process was served on him May 26, 1891. Mrs. M. F. Laird did not answer either bill, process having been served on her to answer each, and to answer amended bill on May 26, 1891. Defendant D. C. Casto answered the amended bill November 12, 1891. He repeats his former answer denying the charge as to transfer of notes by Milton Laird to Mrs. Grey after the assignment, or that he had any knowledge of or anything to do with such transfer. Defendant Milton Laird, though served with process, does not answer the amended bill,

Neither D. C. Casto, Milton Laird, M. F. Laird, Trustee Smith, nor any one, files any special reply in writing controverting any of the allegations of the answers filed of de-

fendants Thompson & Jackson, James Dils & Sons, Edmonds & Mayo, and Stewart & Hackett, all of whom allege in substance the matters charged in the original bill, and pray affirmative relief.

Defendant Milton Laird, in his answer, says that the sale took place as charged, but on January 24, 1891, the stock of goods was delivered by plaintiff to him as the agent of his wife, M. F. Laird, but that they were not correctly invoiced, but fell short about three hundred and fifty dollars; that the sale was conducted on the part of the plaintiffs by William M. Cox, of the firm, and Lindsay Merritt, their agent, and, on the part of Mrs. M. F. Laird, by defendant Milton Laird as her agent, and that they made many false and fraudulent representations to him as her agent to induce him to buy, and that, thus induced, and relying thereon, he made the purchase for her as her agent; that neither he nor his wife had any experience as merchants, but that plaintiffs and their agents were experienced in the business, and in this matter overreached and cheated his wife, the buyer, and himself, as her agent, giving various details as he claimed them to be, and as showing the fraud practiced on him. He says he did not forget the note of three hundred and eight dollars, executed by his wife to plaintiffs, but it was not specially provided for, because he was advised, before the assignment was made, that she was entitled to an abatement from the purchase-price which she had agreed to pay on account of the misrepresentations, frauds, tricks, and devices of plaintiffs in making the sale and taking the invoice, etc. He files as an exhibit the power of attorney from his wife, already mentioned. In regard to the note of D. C. Casto he says that, taking out pasture for a cow (elsewhere shown to be twelve dollars) and attorney's fees (shown to be twenty dollars) the rest was for borrowed money at different times. He denies all fraud. That he retained none of the proceeds of the sales of the goods, and neither took away nor sent away any of the goods.

The depositions of twelve witnesses, including all those who were at the invoice, and defendant Milton Laird, D. C. Casto, and Trustee Smith, were taken and filed, and va-

rious exhibits, including the invoice accompanying the assignment.

The cause came on to be finally heard on the 19th day of November, 1891, on the summons executed and returned on all home defendants; order of publication duly executed as to E. W. Stansberry, a nonresident defendant; the original bill and exhibits filed therewith; separate answers of defendants Milton Laird, D. C. Casto, James L. Smith, trustee, Thompson & Jackson, Edmonds & Mayo, J. W. Dils & Sons, and Stewart & Hackett filed in court; general replications thereto by plaintiffs upon amended bill; summons thereon, duly executed or accepted, except by E. W. Stansberry; separate answer of D. C. Casto to the amended bill; general replication thereto, and amended bill taken for confessed as to all other defendants; depositions and exhibits. Upon consideration, etc., the court was of opinion that the deed of trust of April 13, 1891, was not and is not "fraudulent on its face or in fact;" and that plaintiffs and defendants praying affirmative relief are not entitled to the relief prayed for in original bill, amended bill, or in the answers of said defendants; holding that defendant Milton Laird was guilty of fraud in making said assignment, but that the trust-deed is valid and binding; and retaining the cause to administer the trust.

That the court was right in holding that defendant Milton Laird was guilty of fraud in making the assignment is beyond question, and need not be discussed. That fact is fully made out by the proof. The court evidently based its opinion on the view that the deed was not fraudulent on its face, and that the trustee had no notice of Laird's fraudulent intent, and did not in any wise participate in the fraud.

In examining this question it is proper to remark that it is not a question of actual fraud in the trustee, but a question of knowledge or notice on his part, no participation being proved. In examining this question, the pleadings as well as the evidence must be considered.

First, the pleadings. The amended bill is taken for confessed against him, and it distinctly charges that the trustee had notice of the grantor's fraudulent intent. This fact is

not charged in the original bill, but the trustee, in his an-
swer to the original bill, expressly denies any knowledge
of the fraud or pretended fraud of the grantor Milton
Laird, as charged in plaintiff's bill, or any knowledge of
any effort on his part to hinder or delay his creditors in
the collection of their claims, or to defraud any of his
creditors by word or deed, or in any manner, *etc.* With
the exception just mentioned and one other, the amended
bill is, in substance, the original bill.

The amended bill, in connection with the charge that
the assignee had given no bond; that he made no invoice
of the goods when he took possession on the 17th day of
April, 1891, four days after the date of the assignment;
that Milton Laird, who was postmaster, carried a key to the
store, having his office in the same room ; that the goods
could be taken out without its being known to the trustee,
for want of an invoice—makes the new, additional charge
that on the day the receiver of the court took charge, goods
were taken out by defendant Milton Laird, and that he
fraudulently disposed of the proceeds of the sale of the
goods and did not apply them to the payment of the
debts.

It is charged and admitted that the trustee was a young
man, twenty eight years old living in an adjoining county,
studying law in the office of the principal preferred cred-
itor, who prepared the trust-deed. He took no invoice
when he took possession, and, though apparently a stranger
to the other creditors and at Ripley Landing, where the
store was, and worth but four hundred dollars or five hun-
dred dollars, he gave no bond. After he took possession
he permitted Milton Laird to carry a key because he was a
United States postmaster, so giving him access to the goods.
The deed to him is made by M. F. Laird and Milton Laird,
of Jackson county, State of West Virginia, and himself,
James L. Smith, of Wirt county, West Virginia. It recites
that M. F. Laird is doing business in Jackson county, when
he knew she lived at Burning Springs, in Wirt county; re-
cites not that Milton Laird, her husband, but M. F. Laird,
is indebted to various persons in considerable sums of
money, which are particularly described and enumerated

in Schedule A. In the circumstances it was the part of prudence to give a bond equal at least to the value of the property to be sold, as contemplated by the statute, before receiving any of the proceeds of sale, seeing that the other creditors lived at a distance and could not at once notify him that a bond was required. See section 6, c. 72, Code. It is true that such failure does not of itself render the deed invalid, yet it is a circumstance to be considered.

Again, "one of the earliest duties of an assignee is to ascertain the extent and particulars of the assigned property. A very material guide for this purpose is in the inventory or schedule annexed to the assignment itself. But, if there be no schedule annexed, his first business will be to make or cause to be made an exact inventory of the assets." Burrell Assignm. (5th Ed.) § 375 *et seq.*

Here the accuracy of the schedule annexed to the deed of trust was not tested by the trustee, except by a mere cursory examination when he took possession. Here there was a schedule of the store-goods, about which the assignee at a distance could know nothing, and he did not go to the place or take charge of the store until after the lapse of four days. He then made no invoice, and took no inventory. Here the debtors propose to convey all their property except exempt property, including all their lands and tenements, goods and chattels, personal property, choses in action. The inventory annexed describes nothing but store-goods and household furniture. Where and what were the lands, choses in action, and other personal property mentioned generally in the assignment? The assignee made no inventory of these, and as to them does not enlighten us in his testimony.

Section 6, c. 72, among other things, provides as follows: "And in all cases where a debtor conveys all his property to a trustee for the benefit of his creditors, or where he conveys all his property except what is exempt from execution or other process (as in this case) every trustee shall settle his accounts before a commissioner of accounts of the county in which such land is recorded, and the provisions of chapter 87 of the Code of West Virginia, as amended, shall apply to such settlement as far as practicable."

How is he to make out and exhibit the inventory required by section 2 of chapter 87 of the personal and real property which is under his authority ? But did the trustee know, or ought he to have known, the grantor's fraudulent intent? I have no doubt of the integrity and truthfulness of the trustee; but he had not the slightest idea of practical mercantile affairs, as he says, nor, as it seems, a due sense of the importance of taking possession at once of the fugitive remnants of an insolvent country-store. He was reading law, it is true, but was still in the hornbooks; had not yet dipped into the reports of his own and of other states ; did not know the ways of those dealers who make money by insolvency. When the deed was handed to him at Wirt C. H., to take, record, and execute, he saw at once that it was made by a married woman, the professed debtor and owner of the store, carrying on the business in her own name. He knew that husband and wife were living together, had their home at Burning Springs, Wirt county, for he so states in his testimony. Why did he not ask the husband how it happened that his wife was carrying on this business in her own name ? See section 13, c. 66, p. 607, code 1887. He saw that the deed was intended to go on record, and to satisfy creditors as a fair and honest assignment of all their property, conveyed all their lands, but gave in the body no definite description or location. Did it not occur to him to ask why the land with a description was not set out in the schedule—at least to find out for himself where and what the land was ?

It has been suggested in argument that the deed may have been a printed form, filled up, and that the grantors forgot to erase the words "lands and tenements." But we have the original deed before us, and find it all in writing, reciting that the grantors are desirous to convey all their property, both real and personal, for the benefit of their creditors, and "do grant, bargain, and sell and convey all their lands and tenements," *etc.* If he had asked that question, and Milton Laird had given the same answer that he afterwards gave in his testimeny—that they owned no land—he would have seen at once that such a deed was in that regard calculated to lull and mislead the

creditors who did business in Parkersburgh, Pittsburgh, Boston, and elsewhere, especially as Laird had assured them that he was worth from two thousand dollars to four thousand dollars, as the basis of buying from them on credit. He should not have permitted the deed to recite "M. F. Laird, of Jackson county," when he knew she was of Burning Springs, Wirt county. A falsehood said or done to the injury of the property-rights of another is of the very essence of fraud; and the trustee knew, or ought to have known, that this assignment was untrue and misleading in two particulars at least. See *Reilly* v. *Barr*, 34 W. Va. 95; (11 S. E. Rep. 750); *Goshorn* v. *Snodgrass*, 17 W. Va. 717.

And where were the choses in action? They are expressly assigned. Are we to suppose these merchants had none whatever? The evidence shows that Milton Laird had several notes at one time. Nothing of the sort is set out in the schedule asked for by the trustee, or delivered by the grantors. The trustee should have demanded the possession of them and listed them; or, if he had found out there were none in fact, then he should not have permitted the assignment to refer to Schedule B. as containing a description or list of such choses in action.

The right of insolvent merchants to make preferences opens a wide door to fraud, and such right to prefer has been discouraged, and in fact forbidden, pretty much everywhere. Our present act on the subject was passed March 14, 1891, but did not take effect for ninety days, so that the assignment made April 13, 1891, is governed by the old law, in which such preferences are permitted, but not encouraged; it being shown by experience that it is so easy for the debtor in that way to cover up and secure something for himself. In most of the states the rule is that a fraudulent intent on the part of the debtor alone is sufficient to avoid the assignment, without proof of any notice of or participation in the fraud on the part of the assignee or creditors. See Burrell, Assignm. p. 30, and cases cited; *Nicholson* v. *Leavitt*, 6 N. Y. 510 (57 Am. Dec. 499) and notes. But the rule is otherwise in this State, where the trustee for the creditors is regarded as a purchaser for value, in whom *mala fides* must be shown, or notice of the fraudulent intent.

I do not regard this deed of trust as fraudulent on its face, and therefore *ipso facto* void. There is no postponement of the conversion of the assets into cash, as one of the objects or necessary results of the assignment, except what is merely incidental to the execution of the trust. It is not like the case of *Landeman* v. *Wilson*, 29 W. Va. 702 (2 S. E. Rep. 203). There the property appeared to be worth much more than the debts secured, and it provided that, should the trustee deem it to the best interests of said creditors, he was thereby authorized either to rent or run the mill property for the period of one or more years, or for a greater or less period of time, as shall seem to him desirable after having consulted with the creditors and obtained their consent, or the majority in interest therein. Creditors not named were in no wise secured. Here a sale seems to be contemplated in pursuance of the statute, which reads: "And if no terms are mentioned therein (in the deed) then upon the following terms, to wit: If the property to be sold be real estate, one third of the purchase-money cash in hand; one third thereof, with interest, in one year, and the residue thereof, with interest, in two years," *etc.*; "and, if the property to be sold be personal estate, then for cash, having first given notice," *etc.* See section 6, c. 72, Code, also *Landeman* v. *Wilson*, above, where the Virginia and West Virginia authorities *pro* and *con* are fully discussed by Judge JOHNSON, delivering the opinion of the Court, and by Judge SNYDER in a dissenting opinion.

I have thus far discussed the case on the theory that the general replication to the answers of defendants Thompson & Jackson and others, who claim affirmative relief, is sufficient, and that special reply in writing is unnecessary under sections 35, 36, c. 125, of the Code. Upon the construction of these sections we have quite a number of decisions, most of them cited in the margin of the Code (Ed. 1891) p. 805. See, also, the cases of *Taylor* v. *Beale*, 4 Gratt. 93; *Mettert* v. *Hagan*, 18 Gratt. 231—as to our former practice.

If the affirmative relief sought is only incidental to the main relief prayed for in the bill, and covered also by the

general prayer, if it seeks no discovery and makes no defence not equally available by way of answer under our former practice, no special replication should be required or permitted to such answer. See *Kilbreth* v. *Root's Adm'r*, 33 W. Va. 600 (11 S. E. Rep. 21). And if the equities between the co-defendants arise out of the pleadings and proofs between plaintiffs and defendants, then the court can and ought to do complete justice by decreeing between the co defendants. See *Radcliff* v. *Corrothers*, 33 W. Va. 682 (11 S. E. Rep. 228). But section 4, c. 134, of the Code, which declares "no decree shall be reversed for want of a replication to answer, where the defendant has taken depositions as if there had been a replication," refers to the general replication, and not to the special reply in writing; but section 4, c. 134, further on, says : "Nor shall a decree be reversed at the instance of a party who has taken depositions for any informality in the proceedings when it appears that there was a full and fair hearing upon the merits, and that substantial justice has been done."

In *Cunningham* v. *Hedrick*, 23 W. Va. 579, it was held that this latter part of the section does apply, and that, if the record shows that it is not such a case as would, before the passage of the sections 35 and 36 of chapter 125, have made the filing of a cross–bill necessary in order to entitle the defendant to the relief sought, the decree will not be reversed because no reply in writing was filed. But see *Clark* v. *Figgins*, 31 W. Va. 157–161 (5 S. E. Rep. 643) where such answers were regarded as in the nature of cross-bills. S. C. 27 W. Va. 663. Under section 35 the defendant in a suit in. equity may, in his answer, allege any new matter constituting a claim for affirmative relief in such suit against the plaintiff or any defendant therein, in the same manner and with like effect as if the same had been alleged in a cross-bill filed by him therein.

Here the defendants do not allege any new fact for the purpose of showing the assignment to be fraudulent, but one of them calls for a discovery, and they all pray relief which in some respects could not be fully given except in a cross-bill and answer or petition in the nature of a cross-bill—that is, that they do not claim under, but repudiate,

the deed of trust, and join in the attack against it for its overthrow; and the order in which they file these answers praying for affirmative relief is not only necessary to show on which side they are in the controversy, but the order of filing them determines the order of priority if successful. So that it is not at all certain that, if any one of them contains any material allegation of new matter constituting a claim for affirmative relief, not controverted by a special reply in writing, such material allegation should not, for the purposes of the suit, be taken as true, and no proof thereof be required. In other words, if it is a proper answer by way of cross-bill, then it is taken as for confessed.

But if the question is to be determined by "our former practice," and the reasons and rules on which such practice was founded, then the case would have to be a very plain one to require a special reply in writing after the cause had been heard upon its merits with a general replication in, and the hardship that might be produced in such cases if on appeal the answers were to be taken as true, and no proof required of the material allegations of new matter constituting a claim for affirmative relief, has led, no doubt, to some of our decisions on the subject. On the subject generally, see *Kanawha Lodge* v. *Swann, supra;* p. 176 (16 S. E. Rep. 462.)

But in this case the discovery prayed for was informally made by producing and filing the note called for; and the other branch of the question need not be further discussed, for a satisfactory conclusion has been reached without taking any such answers in the bills as for confessed against any one interested in the main question; that is, not against Mrs. Laird, who did not answer at all, nor the amended bill against Milton Laird and Trustee Smith, because their answers to the original bill were in effect also answers to the amended bill, and defendant D. C. Casto filed his answer to each. But when we read the assignment by the light of surrounding circumstances, there can be no doubt of the grantor's fraudulent intent, or that the grantee must be held to have had notice of it, no matter what may have been the honesty of intention or knowledge in fact on the part of

the assignee, and we repeat that both his answer and his testimony give a favorable impression as to both his honesty and truthfulness.

For the reasons given we are of opinion that the Circuit Court should on the pleadings and proof have set aside as fraudulent, as far as necessary, the deed of trust of April 13, 1891, in favor of plaintiffs and the defendants attacking said deed, and should out of the proceeds of sale have provided for the payment of such claims in the order of attack; that is to say, in the following order: (1) Plaintiff's three notes; (2) the claim of Thompson & Jackson; (3) the claim of James W. Dils & Sons; (4) the claim of Edmonds & Mayo; and (5) the claim of Stewart & Hackett. The decree of November 19, 1891, is therefore reversed, with costs in this Court against defendants Milton Laird and D. C. Casto, and the cause remanded for further and proper proceedings. Reversed and remanded.

REVERSED. REMANDED.